COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Lemons*
Argued at Alexandria, Virginia


MARCUS STERGIOU

MEMORANDUM OPINION** BY
v.   Record No. 0156-99-4          JUDGE ROSEMARIE ANNUNZIATA
                                        MARCH 21, 2000

FREDERICK COUNTY DEPARTMENT
 OF SOCIAL SERVICES


               FROM THE CIRCUIT COURT OF FREDERICK COUNTY
                        John R. Prosser, Judge

          Mark A. Vann (Chasler and Bowman, P.L.C., on
          brief), for appellant.

          Beth M. Coyne (Fowler, Griffin, Coyne, Coyne
          & Patton, P.C., on brief), for appellee.


     Marcus Stergiou appeals the order of the Circuit Court of

Frederick County terminating his residual parental rights toward

his natural children, M.H. and J.P.  We find no error and affirm

the judgment of the lower court.

     On August 9, 1995, the Frederick County Department of

Social Services took custody of M.H. and J.P. after it was

contacted by their seventy-six-year-old maternal grandmother,

Bell Ann Parsons.  Parsons indicated that the children's mother,

     * Justice Lemons participated in the hearing and decision of
this case prior to his investiture as a Justice of the Supreme
Court of Virginia.

     ** Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Joeann Hawkins, had left the children with her on August 4, 1995 and that Hawkins had an alcohol and substance abuse problem. Parsons also told Social Services that Stergiou was the father of the children. Social Services placed the children in emergency foster care. Stergiou was incarcerated in June, 1996 upon conviction for drug possession. In July, 1998, the juvenile and domestic relations district court terminated his parental rights. In a trial de novo, the Frederick County Circuit Court on December 14, 1998, likewise ordered the termination of Stergiou's residual parental rights. Upon appeal to this Court, Stergiou contends that the trial court's termination of his residual parental rights is without evidence to support it, noting, in particular, that long-term incarceration, without more, is insufficient evidence to warrant termination of parental rights. We find Stergiou's appeal to be without merit and affirm.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax Co. Dept. of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citing Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982); Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). In making decisions concerning a child's

welfare, the court is vested with broad discretion to guard and to foster a child's best interests. See Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citing Farley, 9 Va. App. at 328, 387 S.E.2d at 795). It follows that long-term incarceration does not, per se, warrant the termination of parental rights. But incarceration is nevertheless a factor which may be considered in deciding the question. See Ferguson v. Stafford County Dept. of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

In the instant case, the court found "by very clear and convincing evidence" that the children had been neglected or abused; that this neglect and abuse was a serious threat to their lives, health, or development, and that it was not reasonably likely that the conditions which resulted in the neglect or abuse could be substantially corrected so as to allow the children's safe return to the father within a reasonable time; that the father, without good cause, did not respond to or follow through with appropriate, available, and reasonable rehabilitative efforts on the part of social, medical, mental health, or other rehabilitative agencies designed to reduce, eliminate, or prevent the neglect or abuse; that he, without good cause, was unwilling or unable within a reasonable period of time to remedy substantially the conditions that led to the children's placement in foster care; and that he failed, without

good cause, to communicate with the children for a period of twelve months.[1]

A trial court's decision, based upon an <u>ore tenus</u> hearing, is entitled to great weight, and it will not be disturbed unless it is plainly wrong or without evidence to support it.  See <u>Orlandi v. Orlandi</u>, 23 Va. App. 21, 28, 473 S.E.2d 716, 719 (1996) (citing <u>Venable v. Venable</u>, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986)).  In reviewing the evidence on appeal, the evidence and all reasonable inferences arising from it must be cast in the light most favorable to the party prevailing below, Social Services.  See <u>Martin v. Pittsylvania County Dept. of Soc. Servs.</u>, 3 Va. App. 15, 20, 348 S.E.2d 15, 16 (1986).

---

[1] The trial court's findings addressed the relevant statutory factors which govern its decision in this case.  Code § 16.1-283(B) provides that residual parental rights may be terminated upon a showing by clear and convincing evidence that:

> It is not reasonably likely that the conditions which resulted in . . . neglect or abuse can be substantially corrected or eliminated so as to allow the child's return to his parent or parents within a reasonable period of time. . . .  Proof of . . . the following shall constitute prima facie evidence of [such lack of reasonable likelihood]:  The parent or parents have habitually abused or are addicted to intoxicating liquors, narcotics or other dangerous drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning . . . .

The evidence, thus viewed, fully supports the decision of the trial court and makes manifest that it did not rely solely on the fact of Stergiou's incarceration in reaching its conclusions.

Stergiou had lived with Hawkins and the children intermittently from roughly 1990 through 1993, the approximate time when he moved from the home permanently.  M.H. was approximately four years old at the time; J.P. just two.  Thus, Stergiou had only lived together with Hawkins and the children for about half the time since J.P.'s birth in 1992.  In April, 1995, Hawkins left her children in Stergiou's custody at his residence in Manassas, Virginia.[2]  He subsequently contacted the Prince William County Department of Social Services and reported that he lacked the means to care for the children and requested that the department assume custody of M.H. and J.P., who were then five and three years old, respectively.  The Department responded and placed the children in foster care.  At the time, Stergiou reportedly had a severe substance abuse problem and was evading law enforcement, and the Department had no current address for him.

---

[2] In addition to M.H. and J.P., Hawkins also left in appellant's custody her two elder children, whom she bore by the late Michael Carroll Hawkins.  Parental rights for those children are not at issue in this appeal.

Stergiou made no attempt to seek custody of the children after they came into the custody of the Department. Instead, on November 25, 1995, he asked that blood tests be conducted to determine paternity. He agreed that no visitation with the children would occur until the paternity testing was complete and paternity established. The testing was performed on January 2, 1996, and the results established appellant's paternity. He gave the Department and the court a mailing address for him in Bethesda, Maryland at that time.

Three months later, in March, 1996, appellant provided Prince William County Department of Social Services with a mailing address and telephone number in Manassas, Virginia. When social workers attempted to phone him later in the month, they found the number disconnected, however. In addition, Stergiou failed to submit a completed and notarized information sheet authorizing the Department to conduct a home study at his residence.

The Prince William Department had no further contact with appellant until a year later when, in March, 1997, social worker Julie Deiter located him at the Prince William County jail, where he was incarcerated for drug possession. Deiter spoke to Stergiou by telephone while he was incarcerated and learned that he had been in jail since June, 1996 and that he anticipated being released in December, 1997. He had made no attempt to

contact Prince William social services following his incarceration in June, 1996 and he stated there was no sense in writing to his children during that time. Deiter arranged an appointment with Stergiou in December, 1997 to discuss his plans for the children following his release. However, when she called the jail in December, 1997 to confirm her appointment with him, she found he was then incarcerated in federal prison serving a term of seven to eight years for arson and use of a firearm in the commission of a felony. These convictions arose from an arson committed in late 1993 or 1994, at approximately the same time Stergiou was visiting and attempting to file for custody of M.H. and J.P. from Hawkins. He acknowledged that M.H. would be 15 and J.P. would be nearly 12 at the time of his possible release date, 2005.

The evidence respecting the status and condition of the children established that M.H. and J.P. each displayed emotional and developmental difficulties upon their entry into foster care. As of November 23, 1998, the date the Frederick County Department of Social Services filed for termination of parental rights, the children had been in the same foster care placement for over two years and had attended counseling for the same period with Don Wilhelm, L.C.S.W., a therapist with United Methodist Family Services. When the children began therapy, they manifested problems with trust, difficulty sleeping,

aggressive behavior and, in J.P.'s case particularly, oppositional behavior.  The children have demonstrated notable improvement in their emotional and psychological development, and Wilhelm has opined that their continued well-being requires that they have no further contact with any member of their biological family.

In making decisions concerning a child's welfare, trial courts are vested with broad discretion to guard and to foster the child's best interests.  See Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citing Farley, 9 Va. App. at 328, 387 S.E.2d at 795).  The child's best interest is the paramount consideration of a trial court in such a case.  See id.  The decision of the trial judge is supported by the evidence required to meet the statutory factors governing the termination of residual parental rights, and the decision reflects and serves the best interests of the children.  It is accordingly affirmed.

Affirmed.