COURT OF APPEALS OF VIRGINIA

Present: Judge Humphreys, Senior Judges Hodges and Overton
Argued at Chesapeake, Virginia

LARRY P. COOK

v. Record No. 2256-99-2

DEPARTMENT OF SOCIAL SERVICES OF
MECKLENBURG COUNTY

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM H. HODGES
JUNE 20, 2000

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
William L. Wellons, Judge

Lucretia A. Carrico (Jonathan E. Green, on brief), for appellant.

Nora J. Miller (Watson & Nelson, P.C., on brief), for appellee.

Larry P. Cook ("appellant") appeals the decision terminating his parental rights to his sons, Larreek and Larrell Garnes ("Larreek" and "Larrell"). Appellant contends the trial judge erred in finding that: (1) sufficient efforts had been made by rehabilitative agencies to work with appellant to correct the abuse and neglect of the children; (2) appellant habitually abused alcohol or drugs to the extent that his parental ability was seriously impaired; (3) appellant had received reasonable and appropriate efforts from rehabilitative agencies to strengthen his relationship with the children; and (4) appellant had received

---

* Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

reasonable and appropriate efforts from rehabilitative agencies to enable him to substantially remedy the conditions leading to the placement of the children in foster care. We affirm the trial judge's rulings.

## FACTS

At the May 26, 1999 termination of parental rights hearing, the parties stipulated that Larreek and Larrell had been abused and neglected pursuant to Code § 16.1-283(B)(1). Candace Elliott, a child protective service worker with the Mecklenburg County Department of Social Services ("DSS"), testified DSS had been involved with the Cook family since July 1990. In 1990, DSS received a complaint that Larreek and Larrell had been left alone and locked in a trailer. The boys are twins and were eleven months old at the time of the incident. This was not the first instance in which the parents had left the boys alone. The parents were charged with criminal neglect, and a petition was filed concerning the boys' custody. Custody of the boys was granted to the boys' maternal aunt, Delores Garnes. Appellant and the boys' mother were ordered to attend parenting classes and mental health counseling sessions. Garnes had custody of the boys for about eighteen months.

DSS continued to monitor the family. Appellant completed five of the six parenting classes, and, Elliott stated that, to her knowledge, appellant did not attend any mental health counseling sessions.

Elliott received another complaint regarding the boys on May 30, 1997. The boys were residing with their mother at that time. Larreek had been admitted to a treatment center for severe depression, homicidal ideations and self-mutilation. Mrs. Cook did not follow through with the recommended treatment or medication.

On June 18, 1997 DSS received another complaint concerning lack of supervision of the children and leaving the children with improper caregivers. Larreek and Larrell stated they had been given drugs and alcohol by their teenage babysitters. A prevention worker continually worked with Mrs. Cook.

In September 1997 Mrs. Cook left Larreek in Poplar Springs Hospital, did not visit him, and did not maintain contact with the hospital. The children were again placed in foster care.

Joy Gupton, a social work supervisor at DSS, testified that DSS developed a foster care service plan with the parents in 1992. The goal of the plan was to place the boys with another relative because the boys had been living apart from their parents for eighteen months and the parents had not found housing at that time. The children were placed in the custody of their maternal grandfather, James Brown, where they lived from April 1992 until sometime in 1996, when their mother again obtained custody.

DSS had submitted several foster care plans over the years. Initially, the goal of the plans was to place the boys with relatives because the parents were unable to maintain their own

home. Based on DSS' lengthy involvement with the family, the goal of the latest versions of the plans had not been to place the boys back with the parents.

DSS continued to work a prevention case with appellant in order to prevent the removal of other children from the family. DSS provided support and guidance to monitor the children and to encourage the parents to provide proper care and guidance for the children. Appellant sometimes requested funds, food, and assistance with housing from DSS, which the agency provided him when able to do so.

In March 1994 DSS learned appellant had sold food stamps to purchase crack cocaine. Appellant also indicated a desire to attend substance abuse counseling, but only attended one session, stating he could handle his problems on his own. Gupton testified that during the years DSS had an open prevention case concerning the boys, appellant was offered aid, food stamps, assistance with heating and weatherizing of a mobile home, parenting classes, and substance abuse counseling.

Christy Mills, a DSS social worker, testified she had been the case manager for the family since October 21, 1997. She stated the boys had "severe emotional problems" when they entered foster care. The boys were withdrawn and "shutdown" most of the time. Larrell was diagnosed with ADHD and had the language development of a five year old, although he was eight years old. Larreek had twice been hospitalized for depression and was

diagnosed with reactive attachment disorder. He had suicidal ideations and needed "very, very managed care." Mills stated the boys needed a stable environment, nurturing and good health. DSS provided mental health counseling to both boys.

Since being placed in foster care, the boys are doing well in school and are "very expressive." Mills testified they are "excelling," "thriving" and starting to enjoy sports. She stated they are "really, really doing well." Mills also stated that in December 1997, appellant indicated he wanted to have visitation with the boys. In January 1998, Mills wrote appellant a letter suggesting they meet to discuss visitation. Appellant never responded to the letter.

Appellant's criminal record was also admitted into evidence. Since 1990, he has had fifteen convictions, including assaulting his wife and mother, three counts of cocaine distribution, driving under the influence, and food stamp fraud. Michael Jones of Piedmont Court Services Community Corrections testified the agency has supervised appellant on six occasions. On several occasions, appellant failed to complete the court-ordered community service. He was also a "difficult probationer," who kept appointments only periodically. Appellant asserted that he was disabled and could not perform community service; however, he failed to produce requested medical records to Jones indicating his disabilities.

Charles Parrish, Chief Correctional Officer for the Mecklenburg County Jail, testified appellant "didn't adjust at all

to jail. He was very uncooperative, very hard to please." He was verbally abusive, aggressive and threatening. Parrish stated appellant's adjustment was one of the worst he had ever seen.

Delores Garnes testified she has had custody of another one of appellant's children for eight years, since the child was two months old. Garnes stated appellant has only occasionally visited the child. Garnes also testified appellant sometimes drinks alcohol excessively and in 1997 once told her he could not eat because he was "coming down off a high." She did not feel appellant was a fit and proper person to have custody of Larreek and Larrell. Garnes had custody of the boys from August 1990 to January 1992 when she entrusted the children to DSS because she was having problems with the parents.

Appellant testified he and his wife lived with his mother until the children were removed from their custody in 1991. He also stated he and his wife separated at about the end of 1997. Prior to 1997, appellant saw Larreek and Larrell only when the boys' grandfather brought them to visit him. After he separated from his wife, appellant saw the boys about once or twice a week. He stated he provided for the boys with his disability check. He testified he did not know the boys were supposed to be attending mental health treatment. Appellant also did not know the boys had been removed from the custody of their mother until about one month after their removal.

Appellant stated that DSS had offered him no services since his incarceration, nor had DSS discussed with him any services it could provide him after he was to be released from incarceration in about one month. Appellant testified he planned to obtain employment upon his release, get housing and get custody of his children.

On cross-examination, appellant testified that DSS worked only with his wife from 1991 through 1995. He did not believe he needed any help, stating that he had only asked for food stamps. Appellant admitted he did not attend the court-ordered mental health counseling sessions in 1990. Appellant testified he did not trade food stamps for crack cocaine, but pled guilty to the charge upon his lawyer's advice. He admitted he subsequently asked DSS for substance abuse counseling, but later indicated he could take care of himself. Appellant also admitted he smokes marijuana and has sold cocaine in the past.

Appellant had not seen Larreek or Larrell since August 1997. He stated that he sold drugs in order to earn money to rent an apartment. Although he stated he earned enough money to get an apartment, appellant did not do so. Appellant also admitted that he does not know the medical condition of his children.

## ANALYSIS

### I. and II. Code § 16.1-283(B)

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount

consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). Where the trial judge hears the evidence ore tenus, his decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. See Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986). "'[T]he rights of parents may not be lightly severed but are to be respected if at all consonant with the best interests of the child.'" Ward v. Faw, 219 Va. 1120, 1124, 253 S.E.2d 658, 661 (1979) (citation omitted). The termination of parental rights is a grave, drastic and irreversible action. "When a court orders termination of parental rights, the ties between the parent and child are severed forever and the parent becomes 'a legal stranger to the child.'" Lowe, 231 Va. at 280, 343 S.E.2d at 72 (citation omitted).

Appellant argues the trial judge erred in finding sufficient efforts had been made by rehabilitative agencies to work with appellant to correct the abuse and neglect of Larreek and Larrell pursuant to Code § 16.1-283(B). Under Code § 16.1-283(B), the parental rights of parents of abused children may be terminated if the court finds by clear and convincing evidence that it is in the best interests of the children and that:

> 1. The neglect or abuse suffered by such [children] presented a serious and substantial threat to [their] life, health or development; and

> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the [children's] safe return to [their] parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the [children's] initial placement in foster care.

Code § 16.1-283(B)(1) and (2). Proof that "[t]he parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse" is prima facie evidence of the conditions set out in Code § 16.1-283(B)(2).

The parties stipulated that the children were abused. The trial judge found appellant had "been frequently before agencies for assistance," including receiving the services of Piedmont Court Services. Appellant had been convicted of fifteen offenses, and he had received several sentences involving probation and community service. However, the trial judge found, and the evidence showed, appellant was a "difficult probationer" and "was not responsive to efforts" to assist him. He also failed to perform community service until required by the court to do so. Appellant did not complete the VASAP program despite being ordered to do so.

Although appellant argues the rehabilitative agencies worked only with his wife, appellant had been ordered to participate in mental health counseling, and he refused to do so. He also failed to complete parenting classes offered by these agencies. In addition, appellant testified he did not need any "help." Furthermore, evidence was presented that DSS provided appellant food stamps, food, and heating assistance upon his request. During this time period, appellant was convicted of trading food stamps for crack cocaine. DSS also offered substance abuse counseling services, which, again, appellant refused to attend, stating he could handle his own problems.

Therefore, the evidence supports the trial judge's finding that sufficient efforts had been made by rehabilitative agencies to work with appellant to correct the abuse and neglect of the children. See Code § 16.1-283(B). The evidence further showed that such efforts were made both prior to and after the children were placed in foster care. However, appellant failed to respond to or follow through with the rehabilitative efforts of the agencies.

Appellant also argues the trial judge erred in finding appellant habitually abused alcohol or drugs to the extent his proper parental ability was seriously impaired pursuant to Code § 16.1-283(B)(2)(b). Appellant admitted he smokes marijuana and has sold cocaine to earn money. He had three convictions for the distribution of cocaine. As stated above, he was convicted of

trading food stamps for crack cocaine, and he failed to complete substance abuse counseling. He was convicted of driving under the influence, and he failed to complete the VASAP program. Appellant also had a suspended driver's license due to his alcohol abuse. Garnes testified she had seen appellant when he claimed to be "high."

This evidence clearly supports the trial judge's finding by clear and convincing evidence that appellant habitually abused drugs and alcohol to the extent his proper parental ability was seriously impaired, pursuant to Code § 16.1-283(B)(2)(b).

III. Code § 16.1-283(C)(1)

Appellant argues the trial judge erred in ruling appellant had received reasonable and appropriate efforts of rehabilitative agencies to communicate with appellant and to strengthen his relationship with Larreek and Larrell pursuant to Code § 16.1-283(C)(1).

The trial judge found Larreek and Larrell are children with a "myriad of problems" who had received a "great deal of care and assistance" from DSS over the years. The judge also found that appellant "has had very limited contact" with the boys, has shown "little interest in them," and has not made "good efforts."

The evidence showed that when the boys were in the custody of Brown, appellant only saw the children when Brown brought them to visit him. The evidence further showed appellant failed to maintain contact with the children even before he was incarcerated

in 1997. At one time he told a DSS worker he would like visitation with the children, but he never responded to her letter requesting a meeting to discuss the matter. Appellant did not even know the boys were in foster care until one month after DSS had removed them from the custody of their mother. He further testified he was unaware of their medical condition and was unaware they attended mental health counseling. Therefore, the evidence supports the trial judge's finding.

## IV. Code § 16.1-283(C)(2)

Appellant argues the trial judge erred in ruling appellant received reasonable and appropriate efforts from rehabilitative agencies to enable appellant to substantially remedy the conditions which led to the boys' foster care placement pursuant to Code § 16.1-283(C)(2).

While appellant contends that DSS failed to provide him with sufficient services to allow the children to return to him, the record supports the trial judge's finding that appellant failed to substantially correct the conditions which led to the children's foster care placement despite DSS' reasonable rehabilitative efforts. It is true appellant attended most of his parenting classes; however, the evidence indicated that he failed to implement what he had learned into his dealings with the children. Moreover, appellant refused to attend mental health counseling or substance abuse counseling and continually violated the law, resulting in incarceration.

> [W]hile . . . incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Prior to his incarceration, appellant made no efforts to obtain housing for the boys, despite the fact that he testified he had earned enough money to rent an apartment by selling drugs. He was unaware of the medical condition of the boys and did not even know their mother had lost custody of the boys until one month after this occurred. Although appellant's wife had sole custody of the children during part of the applicable time period, and DSS received numerous complaints while the children were in her sole custody, the evidence showed that DSS attempted to work with the entire family, including appellant, in an effort to remedy the conditions which led to the foster care placement of Larreek and Larrell. In addition, Larreek and Larrell were left alone and unsupervised while in the custody of both appellant and his wife.

Furthermore, the trial judge stated that, although appellant was soon to be released from jail for the drug distribution charges, he would have a significant suspended sentence which could result in a lengthy incarceration period if appellant did

not "adjust" his conduct. The trial judge also stated, "Services have been offered [to appellant], not only by Piedmont Court Services, but by the social services agency . . . ." In summary, the trial judge found, "The agency has been very much involved in helping, and yet, [appellant] has either not responded to those services or those services have failed to bring him around." Therefore, the trial judge found by clear and convincing evidence that it was in the best interests of Larreek and Larrell that appellant's parental rights be terminated.

The trial judge further found the evidence proved the neglect and abuse suffered by the children presented a serious and substantial threat to their lives, health and development. In addition, the trial judge found appellant has not responded to the efforts that have been made to rehabilitate him and encourage his parenting skills, and he has shown "no good cause" as to why he has not responded to these efforts. The trial judge found by clear and convincing evidence that appellant has failed to maintain continuous contact with the children and failed to provide a substantial plan for the children's future. Thus, the judge concluded appellant "has been unwilling or unable within a reasonable period of time to remedy substantially the conditions which led to these children being placed in foster care." As discussed above, the evidence clearly supports these findings.

Moreover, Larreek and Larrell have been in and out of foster care since 1990. "It is clearly not in the best interests of a

child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Although appellant testified he would get "established" after his release from incarceration, the trial judge was not required to place more credibility in appellant's proposed plans for the future than warranted by his actions in the past. Furthermore, Larreek and Larrell are performing "exceptionally well" while in foster care and are now "thriving."

Therefore, evidence in the record fully supports the findings of the trial court that DSS presented clear and convincing evidence sufficient under Code §§ 16.1-283(B) and (C) to terminate appellant's parental rights to Larreek and Larrell.

Accordingly, the decision of the trial judge is affirmed.

Affirmed.