COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Felton and Senior Judge Willis


DIANNA ROWAN FEATHERSTONE

                                                    MEMORANDUM OPINION[*]
v.      Record No. 2151-03-3                               PER CURIAM
                                                           MAY 25, 2004
DIVISION OF SOCIAL SERVICES OF
 THE CITY OF DANVILLE


            FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
                        Charles J. Strauss, Judge

        (Larry Gott, on brief), for appellant.

        (W. Clarke Whitfield, Jr., Interim City Attorney, on brief), for
        appellee.

        No brief for the Guardian *ad litem* for the infant child.


        Dianna Rowan Featherstone appeals a decision of the trial court terminating her parental

rights to her son (the child) pursuant to Code § 16.1-283(C)(2). Appellant contends the evidence

failed to clearly and convincingly establish that she was unable or unwilling to remedy the

conditions which caused placement of the child with the Danville Division of Social Services

(DSS). Appellant also contends that DSS failed to offer reasonable and appropriate efforts to assist

her in ending the conditions. Upon reviewing the record and briefs of the parties, we conclude that

this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See

Rule 5A:27.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

So viewed, the evidence established that in 2000, DSS received a complaint alleging that appellant left her two daughters home alone and had intercourse in front of them. The two girls were removed from the home while appellant was pregnant with the child. Pursuant to a March 2000 protective order, appellant was ordered to take substance abuse classes. In April 2000, appellant was having problems with the Housing Authority, and Kelly Bailey, a social worker, transported appellant to the Housing Authority to obtain a new apartment. DSS also purchased food for appellant in April 2000. The child was born on May 23, 2000, and Bailey took diapers and clothing to the hospital for him. In June 2000, DSS provided money for appellant's two older daughters to attend the Salvation Army summer camp. Appellant was also having a problem paying her utilities, and DSS set up a payment arrangement with the utility department. In July 2000, DSS requested help from the Salvation Army and Goodwill for a baby bed, baby clothes and other household items. In October 2000, appellant completed the parenting classes as required by the protective order of March 2000. In December 2000, DSS purchased items for appellant's two older daughters, and in January 2001, DSS purchased diapers, Pedialyte and medications for the child.

From March 2000 through April 2001, eight substance abuse tests were offered to appellant. Appellant refused three tests, but took five tests. Appellant tested positive for cocaine on two of the tests, she tested negative on one test and the results were inconclusive on two tests. The first positive test result was on January 3, 2001, and the second positive test occurred on March 2, 2001. The positive drug tests violated the protective order of March 2000.

On April 5, 2001, DSS received a complaint from an apartment manager that the child was left alone in an apartment. DSS investigated the complaint and classified it as a level one physical neglect/high risk. On May 3, 2001, DSS received a complaint that the child was being left unsupervised and had burned his arm. It was also reported that the child had gotten outside his residence on several occasions and gotten his head stuck in the porch railings. It was also reported that appellant had been seen physically dragging the child across the yard and cursing him. DSS investigated these complaints and classified them as level two physical neglect/high risk. As a result of these complaints, a social worker helped appellant obtain a reissued Social Security card, file for disability, and enroll with WIC. The social worker also transported appellant to the Health Department and helped her enroll in substance abuse classes, which were again ordered by the court.

DSS began the process for a preliminary removal of the child, but on September 4, 2001, he was removed on an emergency basis due to appellant's arrest for criminal charges. The only person left to care for the child was appellant's husband, a convicted sex offender. When asked by the social worker why she would allow her husband to be alone with the child, appellant stated she "just didn't think anything of it." Appellant knew her husband for one month prior to marrying him in August 2001.

The child was seventeen months old when he came into foster care. He had severe temper tantrums, would bite himself, and kick and attempt to bite other persons trying to control him. After several evaluations, the child was diagnosed with autism, spectrum disorder and delays of speech and language development. Since being in foster care, the child has made improvements in his speech and language. At the start of the child's speech and language therapy, he could only speak two words together. At the time of the termination hearing on June

10, 2003, the child could speak in four to five word sentences and could carry on a conversation. The child's behavior had also improved.

Appellant was incarcerated in a diversion center and was scheduled for release in January 2003. On September 22, 2002, the court held a foster care hearing in which DSS asked the court to approve the goal of returning the child to home. The court did not approve the plan and soon after the hearing, appellant absconded from the diversion center, which resulted in a revocation of a previously suspended sentence.

Deborah Fitzgerald, a foster care worker, testified she had concerns with appellant's ability to take care of the child due to her past impulsiveness and lack of good judgment. Fitzgerald testified she had exhausted all options of placing the child with a relative. Appellant told Fitzgerald that her mother lives "somewhere in Texas," and appellant never provided Fitzgerald with names of other relatives. DSS has never been able to identify the child's father.

ANALYSIS

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence that (a) the termination is in the best interests of the child, (b) "reasonable and appropriate" services have been offered to help the parent "remedy substantially the conditions which led to or required continuation of the child's foster care placement," and, (c) despite those services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time not to exceed twelve months from the date the child was placed in foster care." Because "'[r]easonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case," Ferguson v. Stafford Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992), we have held that the trial judge "must determine what constitutes reasonable and appropriate efforts given the facts before the court." Id. at 338-39, 417 S.E.2d at 4 (citation omitted). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be

disturbed on appeal, unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

Appellant argues that DSS failed to provide reasonable and appropriate services to assist her. The record reveals, however, that DSS offered her extensive opportunities and services with housing, utilities, medical supplies, social services, substance abuse counseling, parenting classes, clothing and other household items.

At the conclusion of the hearing, the trial judge found:

> [T]he State has had to assist you, they've offered you programs, they've offered you money, they've offered you clothes, they've offered you baby supplies, they've taken care of your utilities for you, they've done all these things to try to get you to the point where you can do what you need to do as a parent, and you haven't done it. And the child has suffered as a result of it.

Based upon the circumstances of this case, the trial judge did not err in determining that DSS provided reasonable and appropriate services to appellant.

Appellant also argues the evidence was not clear and convincing that she was unwilling or unable to remedy the conditions leading to the placement of the child in foster care. Again, we do not agree. Despite the efforts of DSS, appellant neglected the children, tested positive for cocaine, was arrested, and absconded from the diversion center. Appellant was still incarcerated at the time of the termination hearing.

Upon entry into foster care, the child was diagnosed with autism, spectrum disorder and delays of speech and language development. The child also had severe temper tantrums. Since being in foster care, the child has made improvements in his speech and language and his behavior has also improved. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's finding that DSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(2) and establishing that the termination of appellant's residual parental rights was in the child's best interest.

Accordingly, we summarily affirm the decision of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>