Alexandria
RICHARD WAYNE FERGUSON
v.
STAFFORD COUNTY DEPARTMENT OF
SOCIAL SERVICES
No. 0487-91-4
Decided April 14, 1992

334

COUNSEL

Murry M. Van Lear, II (Scott, Daltan & Van Lear, on brief), for appellant.

Hugh P. Fisher, III, Assistant County Attorney, for appellee.

OPINION

DUFF, J.—Richard Wayne Ferguson appeals the trial court's order of March 6, 1991, terminating his residual parental rights to his son, Richard A. Gochenour. The sole question presented is whether the Stafford County Department of Social Services (Department) made reasonable and appropriate efforts, as specified in Code § 16.1-283, to communicate with appellant to strengthen his relationship with the infant or to assist in substantially remedying the conditions which led to the infant's foster care placement. We affirm for the reasons that follow.

I.

The trial court terminated Ferguson's parental rights under both subsection B and paragraph 1 of subsection C of Code § 16.1-283.[1] At the outset, the Department contends that Ferguson

---

[1] Code § 16.1-283 reads, in pertinent part:

B. The residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment, (ii) an entrustment agreement entered into by the parent or parents or (iii) other voluntary relinquishment by the parent or parents may be terminated if the

failed to preserve for appeal his right to object to the trial court's findings or rulings under Code § 16.1-283(B). The Department concedes that Ferguson preserved his right to appeal the ruling made under Code § 16.1-283(C)(1). The Department argues that in the motion to strike and in other communications to the trial court, Ferguson did not address whether termination was justified under Code § 16.1-283(B). In both his opinion dated February 14, 1991 and his order dated March 6, 1991, the trial court made the findings required by that portion of the statute.

At the conclusion of the final hearing of this matter on December 14, 1990, Ferguson's counsel advised the court that he was relying on the arguments that were made at the various stages throughout these proceedings. A review of the lengthy transcript shows that the primary thrust of Ferguson's position was the failure of the Department to provide him with the services and assistance required by Code § 16.1-283(C). While it is true that no specific, detailed argument was presented addressing the required findings under Code § 16.1-283(B), it is clear to us that Ferguson's position encompassed both subsections. Indeed, the trial court made the required statutory findings necessary to invoke both subsections B and C. We cannot find in this record that the trial court was unaware of Ferguson's position. The trial court responded directly to the issues relevant to subsections B and C. Thus, we proceed to analyze on the merits the issues presented.

court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. . . .

C. The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

1. The parent or parents have, without good cause, failed to maintain contact with and to provide or substantially plan for the future of the child for a period of twelve months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. . . .

## II.

■ On appeal, we review the evidence in the light most favorable to the prevailing party below, in this case the Department. *Schoenwetter v. Schoenwetter*, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989); *Martin v. Pittsylvania Dep't of Social Servs.*, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). Where the record contains credible evidence in support of the findings made by that court, we may not retry the facts or substitute our view of the facts for those of the trial court. When viewed in the light of these principles, the record shows the following:

Richard A. Gochenour, the child of Ferguson and Karen Dunbar, was born on September 8, 1986. On December 15, 1986, Miss Dunbar executed a ninety day agreement entrusting the child to the Department. Ferguson was not present at the time of the entrustment and had no contact with the Department during the ninety day period. Upon termination of the agreement, custody of Richard was returned to Miss Dunbar.

On June 25, 1987, Ferguson pled guilty to a charge of malicious wounding in Stafford County Circuit Court, for which he received a sentence of ten years confinement in the Virginia State Penitentiary, with five years suspended. He remained in Stafford County jail until he was transferred to the Southampton Correctional Facility in March 1988. In November 1988, Ferguson was sent to Calvert County, Maryland to stand trial on various criminal charges pending against him in that jurisdiction. He subsequently pled guilty to first degree murder and the remaining charges were dismissed. On July 21, 1989, the Calvert County Circuit Court sentenced Ferguson to a life sentence for the first degree murder conviction. The record shows that, under Maryland law, Ferguson will not be eligible for parole consideration until sometime during 1999. During the trial of the present action, Ferguson was incarcerated in Maryland serving his life sentence.

While Ferguson was incarcerated in the Stafford County jail on the malicious wounding conviction, Karen Dunbar married Thomas Grimsley but separated from him shortly thereafter. Richard Gochenour began living with Thomas Grimsley's mother in the summer of 1987. The Department of Social Services petitioned for and received custody of Richard on January 27, 1988, and has maintained custody since that date, with Richard being

continuously held in foster care.

Initially, the Department intended to return Richard to one or both of his parents. On March 25, 1988, a foster care service plan was prepared by Jane L. Namoit, a social worker supervisor for the Department. The goal for the child, as documented in the service plan, was "to return home." Ms. Namoit testified that this goal was established because Richard's mother lived in the area and had expressed a willingness to be involved in services in an effort to correct problems she had been experiencing. Mrs. Namoit explained further that Ferguson's incarceration at that point would not be of long duration. He was then serving time only for his conviction of malicious wounding. Mrs. Namoit testified that, at the time this service plan was prepared, she was unaware of a possible first degree murder charge against Ferguson.

However, due to Miss Dunbar's continued dysfunctional lifestyle and Ferguson's indefinite incarceration flowing from his murder conviction, the Department petitioned the Juvenile and Domestic Relations District Court of Stafford County to accept a change in goal for Richard from "return home" to "adoption." That change was approved by the court on July 24, 1988. On November 8, 1989, Karen Grimsley's (nee Dunbar) parental rights to Richard Gochenour were terminated and no appeal was taken.

Upon petition of the Department, Ferguson's parental rights were terminated by the Juvenile and Domestic Relations District Court on January 24, 1990, based upon Code § 16.1-283(B) and (C)(1). He appealed to the circuit court, where the trial commenced on May 7, 1990. Testimony was taken on several occasions, the last being December 14, 1990. The trial judge rendered a written opinion February 14, 1991, and the final order from which this appeal was taken was entered March 6, 1991.

We initially address Ferguson's arguments regarding the alleged failure of the Department to furnish all reasonable and appropriate services as mandated by Code § 16.1-283(C)(1). He asserts that, upon his incarceration, the Department simply "wrote him off" and did nothing to communicate with him or to strengthen his relationship with his son. While the record contains some support for his position, the Department denies that it disregarded its obligation to make "reasonable and appropriate" efforts toward the rendition of services. It points to the first service plan,

formulated many months after Ferguson was initially incarcerated, which clearly established its goal for Richard being returned to his parent or parents. Only after it became apparent that Ferguson's incarceration would be long-term was the goal changed to termination of parental rights and adoption. The Department further argues that the testimony of the social worker, as well as the expert testimony of Rachel A. Ulbricht, a licensed clinical social worker, clearly established that the termination of Ferguson's parental rights was in the best interests of Richard A. Gochenour.

We find no Virginia decision dealing explicitly with the effect of long-term incarceration upon termination of parental rights, or its effect on the statutory obligation of the Department to render services. In *Harris v. Lynchburg Division of Social Services*, 223 Va. 235, 288 S.E.2d 410 (1982), both parents served short terms of incarceration. Harris argued that her incarceration was the primary cause of her inability to remedy the conditions that led to foster care and, thus, her failure in this regard was not without good cause. *Id.* at 242, 288 S.E.2d at 414. In rejecting this contention, the Supreme Court emphasized the neglectful treatment of the children prior to incarceration and did not deal with the issue of the parents' incarceration. *Id.*

In *Cain v. Commonwealth ex rel Dep't of Social Servs.*, 12 Va. App. 42, 402 S.E.2d 682 (1991), the trial court terminated the mother's parental rights because the "good cause that has been advanced. . . is the commission of the crime of robbery." *Id.* at 44, 402 S.E.2d at 683. In reversing, a panel of this Court expressly declined to adopt a per se rule that the commission of a crime constitutes good cause. *Id.* We agree with that holding, but note that *Caine* did not deal with the precise issue before us. *See also Tullos v. Roanoke City Dep't of Social Servs.*, 12 Va. App. 617, 405 S.E.2d 433 (1991).

■ The statute does not specify incarceration as a basis for terminating parental rights or waiving the need for efforts to be made by the Department. The statutory language contained in Code § 16.1-283(C)(1) requires "reasonable and appropriate" efforts to be made to provide services. We must interpret the statutory mandate in accordance with the language chosen by the legislature. "Reasonable and appropriate" efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate

efforts given the facts before the court.

The record contains the expert testimony of Rachel A. Ulbricht. She testified as follows:

Q. In your expert opinion, based upon what you know about Mr. Ferguson and his son, would the Department's offering contacts. . . have strengthened the parent/child relationship in this case?

A. It's difficult for me to see anything positive that could have come out of contact between Richard and his father during his incarceration. We are talking about a child with whom there is no history of a relationship.

* * * * *

Q. Would the contacts have benefitted the child at all in your opinion?

A. I don't see how it could have benefitted him.

* * * * *

Q. If the Department of Social Services had. . . for the past three years encouraged contacts and arranged for visitation. . . what, in your expert opinion, would have been the likely effect on the boy?

A. . . . a child. . . who is as impaired as Richard is, I think would probably find these kind of contacts in the context of incarceration very confusing, very anxiety-provoking, and that in and of itself would not be very good for him.[2]

* * * * *

Q. Are you aware of any counseling services which could have been offered. . . which would have strengthened the parent/child relationship, in your opinion?

---

[2] Regarding the impairment sustained by the child, the expert testified as follows: "He is a very emotionally damaged child. His ability to establish a relationship in an appropriate kind of way is impaired. He is developmentally delayed, his expressive receptive language, that is, what he understands, and his ability to speak or rather to express himself verbally are impaired. He tends to be a clumsy child, which kind of goes with some of that prototype. . . . These behaviors are very common among abused children."

A. I know of no services that could have been offered that would undo and remedy the damage that has been done to this child.

█ The trial court, in its written opinion, placed emphasis upon this expert testimony. We hold that, while long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination. We conclude that this record contains sufficient evidence that Ferguson's parental rights were properly terminated under Code § 16.1-283(C)(1).

Turning to that part of the final order terminating parental rights under Code § 16.1-283(B), the record amply supports the findings made by the trial court that the child had been neglected or abused; that such neglect or abuse presented a serious and substantial threat to his life, health or development; and that it was not reasonably likely that the conditions could be substantially corrected or eliminated so as to allow the child's safe return to Ferguson within a reasonable period of time.

For these reasons we affirm the final order terminating Ferguson's parental rights under both sections of Code § 16.1-283.

*Affirmed.*

Barrow, J., and Coleman, J., concurred.