COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Agee and Senior Judge Coleman


KIMBERLEE ANN LEFLER

v.   Record Nos. 2706-00-3 and                 MEMORANDUM OPINION*
                 2707-00-3                            PER CURIAM
                                                     MAY 8, 2001
SMYTH COUNTY DEPARTMENT
 OF SOCIAL SERVICES


                 FROM THE CIRCUIT COURT OF SMYTH COUNTY
                      Charles H. Smith, Jr., Judge

              (Danny R. Lowe; Lowe & Money, P.C., on
              brief), for appellant.  Appellant submitting
              on brief.

              (Amelia L. Bland; Bland & Associates, P.C.,
              on brief), for appellee.  Appellee submitting
              on brief.


     Kimberlee Ann Lefler appeals the decision of the trial court

terminating her residual parental rights to her two children

pursuant to Code § 16.1-283(C).  Lefler contends the trial court

erred in finding the evidence sufficient to terminate her rights.

For the following reasons, we affirm.

     Lefler and her husband had two children, a daughter born on

December 26, 1992 and a son born on August 31, 1994.  The parental

rights of Lefler's husband were terminated on July 7, 1998.

--------

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

At a hearing held on August 26, 1999, Melanie Carpenter, a foster care worker for the Smyth County Department of Social Services (the Department), testified that the Department had worked with the Lefler family since 1995, providing the family with "every service" that was available to them and furnishing some of the services on more than one occasion. The Department originally became involved with the family in response to complaints in 1995 that the children were being neglected and the parents were having numerous physical altercations. From December 1995 to June 1996, the Department provided services for the Lefler family to assist them in maintaining a stable home environment at a cost of more than $3,400. The assistance included payments for rent and other in-home services.

In addition, Lutheran Family Services (LFS) worked with the family from November 1995 until February 1996. LFS provided crisis intervention, parenting techniques, and assistance to both parents in finding employment. They assisted the family in applying for Medicaid and food stamps. LFS also furnished housing and resource needs, including furniture, food and money for utilities. LFS discharged the family from the program because they failed to meet the goals of the program. At the time of the discharge, Lefler's husband no longer resided with the family, Lefler was in jail, and the children had been placed in foster care.

Family Preservation Services provided services for the family from April 1, 1996 to July 30, 1996.  They provided transportation for Lefler to seek employment and to attend court hearings.  They arranged for Lefler to attend substance abuse and domestic abuse support groups, and they arranged for day care so she could attend these meetings.  These services were terminated when the family moved to Florida.

In April 1996, Lefler and her estranged husband had a physical altercation in the presence of the children, resulting in their son receiving scratches from broken glass.  In May 1996, Lefler and her husband had a physical altercation during which Lefler cut her husband with a knife.  The children were present in the home during that incident.

In addition, Lefler had numerous misdemeanor and felony convictions related to bad check charges.  During one period of time, the Department provided respite care for the children on the weekends that Lefler spent in jail.

In September 1995, the court entered a preliminary protective order against the children's father, ordering him to stay away from the children.  On February 8, 1996, Lefler signed temporary entrustment agreements entrusting the children to the Department to place them in a foster home while she was incarcerated for bad check convictions.  Carpenter testified that the entrustment agreements "lasted" until March 3, 1996.  The

Department provided in-home services to assist Lefler when the children were returned to her care in March 1996 after her release from jail.

The children were back in foster care in September 1996. Prior to that placement, the Leflers had taken the children to Florida despite the court order that Lefler's husband was not to be in the presence of the children. While in Florida, the Leflers had a domestic dispute, and they were arrested. The children were placed in foster care in Florida, and the Florida Department of Health and Rehabilitative Services contacted the Department to take custody of the children. When Carpenter met the children at the airport on their return from Florida, the children attempted to bite and kick her.

When Lefler returned to Virginia from Florida, she was intermittently imprisoned for most of two years for numerous bad check charges. On September 3, 1996, the court awarded the Department temporary custody of the children. The Department placed the children in a foster home while Lefler was incarcerated.

Carpenter testified that when the children first came into foster care "they had a lot of behavioral problems." Both children were diagnosed with ADHD and speech problems. Both children were prescribed Ritalin. While Lefler was incarcerated, the daughter received speech and behavioral therapy. Carpenter

testified the daughter's behavior "improved greatly" while she was in foster care, and she appeared to be "more calm" and "very polite." Carpenter also testified that the son's behavior improved a "great deal" while he was in foster care.

During Lefler's two-year period of incarceration, Carpenter spoke with Lefler several times concerning the service plan and the goals Lefler would need to meet within the first six months after her release from prison in order for the children to be returned to her. Carpenter advised Lefler that the Department had offered services "for so long that [they] felt like these children really needed to be in a stable home. They needed security."

Lefler was released from prison in June 1998. The children were placed back with Lefler in August 1998. Lefler had obtained housing and employment, and she had made progress in stabilizing her life. However, Lefler's husband moved in with the family, resulting in Lefler losing her housing. Lefler then moved to South Carolina with her husband and took the children with her in violation of a protective court order. At the time, the Department was the legal custodian of the children, and the protective order issued against Lefler's husband remained in effect. Lefler did not obtain the Department's permission to move the children out of state.

The Department retrieved the children from South Carolina in November 1998. At that time, the children showed aggressive

behavior. Both children had severe cases of head lice, colds, and flea bites. They were dressed in dirty clothing, and the daughter had insect bites on her arms and legs that she had scratched until they bled. The son had an eye infection. Carpenter testified the children were "wild" and appeared to be angry with everyone. They destroyed their toys, made rude remarks, and the son kicked other children.

Lefler pled guilty to abduction charges related to removing the children to South Carolina, for which she served several months in jail. The Department again placed the children in foster care, and the foster care service plan goal was changed from "return to parent" to "adoption." The Department maintained legal custody of the children. Carpenter testified that the children visited Lefler while she was incarcerated, but they were "hard to control" after they visited her. Sometimes the children did not want to visit Lefler.

In total, the children were in foster care from February 8, 1996 until March 1996, from September 1996 until August 1998, and from November 1998 until the hearing date of August 26, 1999. The son had spent over one-half of his life in foster care, and the daughter had spent over one-third of her life in foster care.

Carpenter opined that the best interests of the children would be promoted by terminating Lefler's residual parental rights. Carpenter stated that the children need a stable home

environment which Lefler cannot provide.  She testified that since 1995, the Department had offered Lefler every available service in order to keep the children in her custody and that Lefler had not substantially benefited from the services.

The foster care plans dated August 18, 1998 provided that within a six-month time period Lefler was expected to accomplish the goals established in the service plan.  The program goal was to return the children to Lefler upon her release from jail.  In order to achieve that goal, Lefler was to secure housing, employment, stay away from her husband, and continue substance abuse counseling, if necessary, within six months of her release from jail.  The evidence showed that Lefler failed to meet these goals.

In March 1999, the Department again filed a foster care service plan for each of the two children.  This plan stated, "The goal of returning to parent was not selected for these children because placing them back with mother would place them at great risk for emotional and physical harm."  This plan also indicated that the children had "special needs due to being hyperactive and having speech problems" and that the foster parents had "worked diligently" on helping the children.  The foster parents also provided "the love, care and support" the children needed.  Therefore, the Department changed the goal of the plans from "return to parent" to "adoption" for the children only after it

became apparent that, despite the Department's rehabilitative efforts, Lefler was unable to achieve the goals of the first plan.

Lefler testified she intends to divorce her husband. While incarcerated, Lefler took parenting and anger management classes. She also received counseling for substance abuse. She stated she had not consumed alcohol for thirty-seven months, and she had obtained steady employment. At the time of the hearing, she had adequate housing.

In the opinion of the guardian ad litem for the children, the best interests of the children would be served by terminating Lefler's parental rights.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. (citation omitted). The trial court's findings, "'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (citation omitted).

The trial court terminated Lefler's residual parental rights pursuant to Code § 16.1-283(C)(1). Code § 16.1-283(C)(1)

provides, in pertinent part, that the residual parental rights of a parent of a child placed in foster care may be terminated if the court finds by clear and convincing evidence that termination is in the child's best interests and that

> [t]he parent . . . [has], without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent . . . and to strengthen the parent-child relationship.

The evidence showed that the Lefler family had been "in the system" since 1995. The Department and several other family service organizations offered Lefler "every service available" to her from 1995 until 1999, attempting to assist Lefler in stabilizing her marriage and working to provide a healthy and secure environment for her two children. Despite this extensive assistance, Lefler made little substantive improvement in her ability to maintain a stable lifestyle. In addition, she failed to maintain continuing contact with the children when she repeatedly spent periods of time incarcerated, once for a continuous period of almost two years.

At one point, Lefler signed temporary entrustment agreements granting the Department the responsibility for the care and custody of her children while she was in jail. These recurring

periods of incarceration, leaving the children in the care of the Department, are a factor to consider when determining whether termination of Lefler's residual parental rights is in the children's best interests.

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child[ren] will be served by termination.

Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Twice Lefler violated court orders by moving the children out of state with her husband and without advising the Department prior to the move. Lefler allowed her husband to live in her home despite the court's issuance of a protective order against him and despite the goal established by the Department that she stay away from her husband. Furthermore, the children have emotional and learning difficulties that are being addressed while they are in foster care. The children's behavior and speech problems improved while they were in foster care. The son had spent over one-half of his life in foster care, and the daughter had spent over one-third of her life in foster care. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of

resuming his [or her] responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

While the evidence shows that Lefler loves her children, the evidence shows that she has substantially failed to maintain continuing contact with the children and to provide or substantially plan for the future of the children for a period of six months after their placement in foster care, notwithstanding the efforts of the Department and other rehabilitative agencies. Although Lefler attended parenting and anger management classes while incarcerated, and she was employed at the time of the hearing, Lefler's past history shows that she has not made the necessary and substantial changes in her life to provide for the children if they were returned to her.

Therefore, the record supports the trial court's finding that the Department presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(1) and establishing that termination of Lefler's residual parental rights is in the children's best interests.  Accordingly, the decision of the trial court is affirmed.

Affirmed.