COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Frank and Clements


DERRICK HUGH DEHANEY

MEMORANDUM OPINION[*]

v.    Record No. 2910-01-4                     PER CURIAM
                                              MARCH 19, 2002
CITY OF WINCHESTER
 DEPARTMENT OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF WINCHESTER
John E. Wetsel, Jr., Judge

(James A. Drown; Larrick, Larrick and Drown,
P.C., on briefs), for appellant.

(Thomas R. Robinett, City Attorney, on
brief), for appellee.


Derrick Hugh Dehaney, appellant, appeals a decision of the

trial court terminating his residual parental rights to his son,

Derrick Dwayne Dehaney.  Upon review of the record and briefs of

the parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the decision of the trial court.

Rule 5A:27.

BACKGROUND

> On appeal, we review the evidence in
> the light most favorable to the prevailing
> party below . . . .  Where the record
> contains credible evidence in support of the
> findings made by that court, we may not
> retry the facts or substitute our view of
> the facts for those of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

<u>Ferguson v. Stafford County Dep't of Soc. Servs.</u>, 14 Va. App. 333, 336, 417 S.E.2d 1, 2 (1992).

Derrick Dwayne Dehaney, the child, was born on February 4, 1991 in Winchester, Virginia. Both appellant and the child's mother are Jamaican citizens. On April 30, 1998, appellant was convicted for a drug offense and was sentenced to 188 months incarceration with a special condition of deportation to Jamaica upon his release. Appellant is incarcerated in Petersburg, Virginia, where he has been imprisoned since at least November 9, 1998. In 1996, the child's mother was deported to Jamaica, where she still resides. Prior to his incarceration, appellant raised the child.

The child first came to foster care on November 9, 1998, and from that date until April 10, 2000, the Winchester Department of Social Services (DSS) attempted to place the child with a member of his immediate family. The mother and maternal grandmother initially expressed interest in having the child placed with them, but their interest faltered. Appellant objected to the child being reunited with his mother.

After exhausting all family alternatives, on April 10, 2000, DSS filed a Foster Care Plan changing the goal of "placement with relative" to adoption. The plan also indicated that termination of each parent's residual parental rights was in the best interests of the child.

-

During the time period the child has been in the care and custody of DSS, DSS has provided appellant with opportunities to maintain telephone and mail contact with the child.  The child's foster care worker indicated he wrote several registered letters to appellant attempting to arrange a face-to-face visit between appellant and the child.  However, he never received any response from appellant.  In addition, the trial court found that appellant abused telephone and mail contact with the child "so as to generate behavioral disturbances in the foster home." The foster mother terminated the child's telephone contact with appellant and screened appellant's mail through a social worker to avoid difficulties with the child.  DSS also provided opportunities for appellant to participate in the design of Foster Care Plans and the educational needs of the child, but appellant has never responded to any overtures from DSS.

The trial court found that it is not in the best interests of the child to maintain ongoing contact with appellant "due to the unacceptable behavioral outbursts generated by such contact."  The trial court further found that,

> given [appellant]'s refusal or inability to participate in the design of Foster Care Plans or to suggest a workable plan for his son's care and custody, while retaining the ability to object to any other workable proposal, . . . [appellant] has failed to plan for the child's future for a period of more than six (6) months, and . . . he has been unwilling or unable to substantially correct or eliminate the conditions which caused the child's placement and

-

> continuation in Foster Care for a period of
> more than twelve (12) months.

In addition, the court found that the neglect suffered by the child, given that neither parent is capable of providing him with a home, presents a "serious and substantial threat to his life, health and development."  Furthermore, the trial court stated, it is "not reasonably likely" that the conditions that resulted in the neglect can be "substantially corrected or eliminated so as to allow the child's safe return to [appellant] within a reasonable period of time."  Accordingly, the trial court terminated appellant's residual parental rights.

### ANALYSIS

Under Code § 16.1-283(B), the residual rights of a parent of a child placed in foster care because of parental neglect or abuse may be terminated only if the court finds by clear and convincing evidence that (1) termination is in the best interests of the child; (2) the neglect or abuse suffered by the child presented a serious and substantial threat to the child's life, health, or development; and (3) it is not reasonably likely that the conditions which resulted in the neglect or abuse can be substantially corrected or eliminated to allow the child's safe return to his parent within a reasonable period of time.

Code § 16.1-283(C)(2) provides that a court may terminate a parent's residual parental rights where a child has been placed

-

in foster care if the court finds, based upon clear and convincing evidence, that (1) it is in the best interests of the child; (2) that the parents without good cause have been unwilling or unable within a reasonable period of time not to exceed twelve months to remedy substantially the conditions which led to the child's foster care placement; and (3) that reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies have been made to such end.

Appellant argues that, other than his incarceration, DSS failed to present any credible evidence that past or future contact with the child was or will be detrimental to the child's best interests.

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights or negate . . . D[SS]'s obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Id. at 340, 417 S.E.2d at 5.

The child has been in foster care for more than three years. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535,

-

540, 394 S.E.2d 492, 495 (1990).  Moreover, the child will be almost twenty years old when appellant is released from prison and deported to Jamaica.  In addition, the child's foster mother testified that although appellant contacted the child infrequently, when the child received mail from appellant or had telephone contact with appellant, he "[got] very agitated" and would have "outbursts."  She stated that after having contact with appellant, the child had kicked a hole in a wall, jumped from a second story window, and had problems in school, such as fighting, threatening teachers, and running away.  Appellant also discouraged the child from having contact with his mother.  The foster mother indicated that since appellant's contact with the child has been limited, the child's behavior has been "a whole lot better" and he has had only a few outbursts.  Furthermore, the foster mother has heard the child talk about his father only in terms of the fights appellant had participated in and the card games he played.  The child is now an "A" student in school, but he is in a "special class" because of his behavioral issues.

The evidence in this case supports the trial court's findings.  It is apparent that appellant is unable to care for a young child and is unable to remedy within a reasonable time the conditions which led to his child's placement in foster care.  Thus, we cannot say that the trial court's finding by clear and convincing evidence that the conditions of Code § 16.1-283 have

-

been established was plainly wrong or without evidence to support it.  Accordingly, we affirm the trial court's decision.

<u>Affirmed.</u>