COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


TYWANDA CARTER

MEMORANDUM OPINION* BY
v.      Record No. 0831-07-2      JUDGE JEAN HARRISON CLEMENTS
NOVEMBER 20, 2007

FREDERICKSBURG DEPARTMENT
 OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
John W. Scott, Jr., Judge

Clifford Y. Rose (Clifford Y. Rose, P.C., on brief), for appellant.

Joseph A. Vance, IV (Joseph A. Vance, IV, P.C., on brief), for
appellee.

Timothy W. Barbrow, Guardian *ad litem* for the minor child.


Tywanda Carter (mother) appeals from a decision of the trial court terminating her

residual parental rights to her minor son, B.C., under Code § 16.1-283(C)(2).[1]  On appeal,

mother contends insufficient evidence supports the trial court's decision because the

Fredericksburg Department of Social Services (FDSS) failed to make reasonable and appropriate

efforts to provide her services.  Finding no error, we affirm.

As the parties are fully conversant with the record in this case, and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The natural father's residual parental rights also were terminated, but he is not a party to this appeal.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. BACKGROUND

On appeal, we view the evidence in the "light most favorable" to the prevailing party in the trial court and grant to that party the benefit of "all reasonable inferences fairly deducible therefrom." Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991). "Where the record contains credible evidence in support of the findings made by [the trial] court, we may not retry the facts or substitute our view of the facts . . . ." Ferguson v. Stafford County Dep't of Social Services, 14 Va. App. 333, 336, 417 S.E.2d 1, 4 (1992).

Responding to a third complaint that a woman in a Twi-Lite Motel room was yelling and cursing at her son and that he was not attending school, FDSS workers investigated and found mother, B.C., and an unknown male in the motel room. B.C., who was born on July 4, 1998 and was seven years old, had never been enrolled in school. B.C. had "poor hygiene," "high fevers," and he was later diagnosed with "severe baby bottle tooth decay." Mother had no identifying paperwork for herself or B.C. B.C. entered foster care on October 20, 2005.

A foster care service plan dated November 30, 2005 stated the program goal of "return to own home" concurrently with adoption. To that end, the November 30 service plan set forth that mother must complete parenting skills classes, a psychological evaluation, a substance abuse evaluation, individual counseling, maintain safe and stable housing, maintain stable employment, attend all permanency planning meetings, maintain weekly contact with FDSS, participate in regular visitation with B.C., and submit to drug testing prior to each visit with B.C. Following a hearing on FDSS's petition for termination of parental rights, the trial court found that FDSS had met its burden pursuant to Code § 16.1-283(C)(2). By order entered December 5, 2006, mother's residual parental rights were terminated. This appeal followed.

## II. ANALYSIS

On appeal, mother contends FDSS failed to make "reasonable and appropriate efforts" because they offered services to her located only in Fredericksburg, Virginia when she resided in Oxon Hill, Maryland. We disagree with mother.

Pursuant to Code § 16.1-283(C)(2), a parent's residual parental rights to a child placed in foster care may be terminated if the court finds, by clear and convincing evidence, that

> [t]he parent . . ., without good cause, [has] been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the *reasonable and appropriate efforts* of social, medical, mental health or other rehabilitative agencies to such end.

(Emphasis added). "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case." Ferguson, 14 Va. App. at 338, 417 S.E.2d at 9.

Moreover, the "termination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we presume the trial court "'to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests,'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

Here, the evidence at trial proved that in furtherance of mother's foster care service plan, FDSS scheduled and rescheduled appointments for her, referred her to agencies that could provide the necessary and appropriate services, and tried to maintain contact with her. Despite these efforts, mother failed to complete the parenting classes, psychological, and substance abuse

- 3 -

evaluations. Shannon Critzer, the FDSS worker handling B.C.'s care, confirmed that mother never maintained stable employment. Despite FDSS efforts to provide monthly permanency meetings for mother to keep her informed of her service plan checklist in furtherance of the plan's goal of returning custody to her, mother failed to attend even one meeting. Although FDSS planned nine visitations with mother and B.C., mother cancelled four, did not show up for two, and arrived late for one. On two days of visitations with B.C., FDSS found that mother tested positive for drugs just before each visit.

When FDSS arranged for B.C.'s evaluation at the Child Development Center, mother arrived late, refused to provide any information about B.C. concerning his family, medical, psychological or social history, and then left the appointment early. When FDSS inquired about B.C.'s schooling, mother claimed that he attended Hyattsville Elementary School in Maryland. She also stated that he attended a nonexistent "Drew Elementary School" in Stafford County, Virginia, and later, that a friend home schooled B.C. Upon investigation, FDSS discovered mother lied about all three assertions.

Thus, considering FDSS efforts to help mother, she consistently frustrated its attempts by providing false information to FDSS, by missing appointments scheduled by FDSS and other agencies, by not communicating with FDSS, by missing most visitations with B.C., and by attending visits with B.C. immediately after she had abused drugs. Therefore, the evidence supports the trial court's finding that FDSS made "reasonable and appropriate efforts" to support mother in remedying the conditions which led to B.C.'s removal.[2]

Mother contends that FDSS efforts were not "reasonable and appropriate" in her case because she never received referrals from FDSS to Maryland agencies near the Oxon Hill

------

[2] At oral argument, mother conceded that, while FDSS services would have been reasonable and appropriate otherwise, here, they were unreasonable because of their situs.

- 4 -

address where she resided. We disagree with mother. From the time B.C. entered foster care through trial, Critzer never could confirm where mother actually lived. On the day B.C. entered foster care, mother provided no identifying documents for herself and had actually lived in the Twi-Lite Motel with B.C. for a week or more before FDSS removed B.C. Mother initially provided a 701 Warrenton Road living address confirmed by Critzer to be an abandoned home. In November 2005, mother also claimed she resided with her aunt at 5012 Glass Manor Drive in Oxon Hill, Maryland. Later in December 2005, mother's aunt called Critzer and informed her that mother did not reside at the Oxon Hill address.

Subsequent in-person meetings with mother left the question of her residence unresolved. In July 2006, mother informed Critzer that she resided in Washington, D.C. but provided no address when Critzer inquired. At trial, mother herself admitted that the Oxon Hill address was her "mailing address" and presented conflicting testimony as to whether she resided at that address. Critzer testified at trial that she never spoke to mother while mother was physically located at the Oxon Hill address and that every time she spoke with mother, mother was physically located in Virginia. Critzer stated that FDSS "offer[ed] transportation to all of [their] parents," but mother never requested transportation.

Critzer further testified that in July 2006, mother made her first request for transferring agency services to Maryland to fulfill her service plan requirements. Indeed, mother concedes that she never advised FDSS that she could not complete the service plan requirements because all of the services offered were in the Fredericksburg area. Considering mother's contradictory assertions and FDSS's inability to establish mother's physical living address, the trial court did not err in concluding that FDSS could not feasibly transfer her service plan needs to Maryland agencies. Therefore, credible evidence supports the trial court's finding that FDSS made "reasonable and appropriate efforts" to assist mother in remedying the conditions that led to

B.C.'s removal. Thus, we conclude the trial court properly terminated mother's residual parental rights to B.C.

## III. CONCLUSION

Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>