COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Alston and Senior Judge Coleman

LEWIS ROBERT NEWMAN, SR.

                                                        MEMORANDUM OPINION[*]
v.        Record No. 2754-08-2                               PER CURIAM
                                                           JUNE 2, 2009
CHARLOTTESVILLE DEPARTMENT
 OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                         Paul M. Peatross, Jr., Judge Designate

            (B. Stephanie Commander, on brief), for appellant.

            (Allyson Manson-Davies, Deputy City Attorney; Rose Burks Emery,
            Guardian *ad litem* for the infant child, on brief), for appellee.


        Lewis Robert Newman, Sr. (father) appeals the termination of his residual parental rights

to his child, L.N., under both subsection B and paragraph 2 of subsection C of Code § 16.1-283.[1]

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Code § 16.1-283 states, in pertinent part:

            B.  The residual parental rights of a parent or parents of a child
            found by the court to be neglected or abused and placed in foster
            care as a result of (i) court commitment; (ii) an entrustment
            agreement entered into by the parent or parents; or (iii) other
            voluntary relinquishment by the parent or parents may be
            terminated if the court finds, based upon clear and convincing
            evidence, that it is in the best interests of the child and that:

            1.  The neglect or abuse suffered by such child presented a serious
            and substantial threat to his life, health or development; and

            2.  It is not reasonably likely that the conditions which resulted in
            such neglect or abuse can be substantially corrected or eliminated
            so as to allow the child's safe return to his parent or parents within
            a reasonable period of time.  In making this determination, the
            court shall take into consideration the efforts made to rehabilitate
            the parent or parents by any public or private social, medical,

On appeal, father contends the trial court erred in finding the evidence sufficient to terminate his parental rights. He also contests the trial court's approval of the foster care plan's "change in goal" to adoption. For the reasons that follow, we summarily affirm the decision of the trial court.

BACKGROUND

L.N., who was born on October 27, 2004, is the biological child of Connie Ryan (mother) and father. In 2005, mother and father's parental rights were involuntarily terminated to their four other children.

On January 31, 2006, father struck mother repeatedly while she was holding L.N. As a result of the incident, the Charlottesville Juvenile and Domestic Relations District Court (J&DR court) removed L.N. from father's physical custody, found L.N. to be neglected and abused, and placed him in the custody of the Charlottesville Department of Social Services (CDSS).

At the time of the January 31, 2006 incident, Nancy Newman (aunt), L.N.'s paternal aunt, had legal custody of him. Shortly after she received legal custody, she allowed father physical

_____

> mental health or other rehabilitative agencies prior to the child's initial placement in foster care.
>
>     \*     \*     \*     \*     \*     \*     \*
>
> C. The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
> 2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. . . .

custody. While in the physical custody of father, L.N. was taken to the hospital and diagnosed with severe asthma. Doctors prescribed two medications and directed use of an inhaler every four hours. Despite doctors' warnings to mother and father that L.N. could not be in the presence of smoke, mother and father subjected him to smoke on a consistent basis.

When L.N. came into CDSS's care, he exhibited delayed verbal skills and indicated what he wanted by pointing and "babbled very little." He expressed few emotions. L.N. did not recognize certain foods that were given to him, and he wanted to be bottle-fed. He was unfamiliar with eating utensils and how to use them. He was underweight, weighing approximately nineteen pounds.

L.N. entered foster care with the foster care service plan goal of "return home" concurrently with "relative placement." To that end, the service plan set forth that father must comply with CDSS's recommendations for services to include in-home, individual, and family therapy; attend and participate in parenting classes; obtain education on child development and apply the skills father acquired to L.N. during visits; visit L.N. on a regular basis and demonstrate parenting skills by showing love, nurturing, and support during the visits; attend a psychological evaluation and follow all recommendations; attend, participate, and complete anger management classes; attend and complete a batterers' group; refrain from alcohol and illegal substance use; sign all releases and communicate with providers; obtain stable employment and maintain financial stability; find and maintain stable housing; update CDSS with any changes to phone numbers, addresses, and employment; communicate with CDSS on a monthly basis; provide CDSS with a list of relatives who could care for L.N.; refrain from illegal activity; and sign background checks.

Despite CDSS efforts to help father, he failed to comply with the foster care service plan's requirements. Specifically, he refused to meet with therapists recommended by CDSS.

He refused to complete a psychological examination arranged for him by CDSS. Father told a CDSS social worker that he was not going to do "this foster care thing" again. On another occasion when CDSS scheduled a meeting for father to discuss a developmental evaluation of L.N., father refused to sign a consent form permitting the evaluation to occur. Later, father signed the consent form but CDSS cancelled the evaluation on two occasions due to the inability to locate father to inform him of the scheduled evaluation.

At a foster care hearing, father claimed he lived with aunt. To the contrary, however, aunt contended that father did not live with her. Father failed to update CDSS regarding his new address or contact information. He did not maintain a stable, safe home. Although father visited L.N. on six occasions in February and March 2006, father failed to remain in contact with CDSS or visit L.N. from March 31, 2006 through September 11, 2006. During the six visits with L.N., father did not display nurturing parenting skills and did not complete services to improve his parenting skills. Father remained unable to show stability, appropriate parenting, or sobriety.

On October 11, 2006, the foster care service plan goal changed from "return home" to "placement with relatives" due to a lack of cooperation and progress by father. On August 24, 2007, the J&DR court terminated father's parental rights pursuant to Code § 16.1-283(B) and (E)(i). Father appealed the J&DR court's decision to the trial court. The trial court conducted a hearing on September 4, 2008. Following the hearing, the trial court terminated father's parental rights pursuant to Code § 16.1-283(B) and (C)(2). This appeal followed.

## ANALYSIS

On appeal, father contends the trial court erred in finding the evidence sufficient to terminate his parental rights. He also contends the trial court erred in approving the foster care plan's "change in goal" to adoption. We disagree with father's contentions.

As a preliminary matter, we have recognized that the "termination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991), and we presume the trial court "'to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests,'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

We first consider father's contention that the evidence was insufficient to terminate his parental rights under Code § 16.1-283(B). The record shows that on January 31, 2006, father struck mother while she was holding L.N. In addition, father subjected L.N. to the presence of smoke, knowing that L.N. had a severe asthma condition. When L.N. came into the care of CDSS, he was underweight, communicated by pointing to what he wanted, was unfamiliar with certain foods, drank from a bottle, was unfamiliar with eating utensils, and expressed few emotions.

Despite numerous attempts by CDSS to help father remedy these conditions and satisfy the foster care plan requirements, father repeatedly refused to cooperate and comply with his responsibilities under the plan. He failed to complete CDSS's recommended parenting skills classes, individual therapy and counseling, psychological evaluation, anger management classes, and failed to participate in a batterers' group. He failed to refrain from alcohol and illegal substance use. He thwarted efforts by CDSS to have L.N. evaluated on a developmental basis by failing to initially sign the release permitting the evaluation. He did not maintain stable housing. He failed to communicate on a monthly basis with CDSS and failed to update his contact

- 5 -

information with CDSS. Although he visited L.N. six times in February and March 2006, he did not thereafter visit L.N. for several months. During the time when father did not visit L.N., CDSS could not locate father.

From this evidence, the trial court could find that father did not complete most of his responsibilities set forth in the foster care plan. We conclude, therefore, that clear and convincing evidence supported the trial court's finding that the neglect or abuse suffered by L.N. presented a serious and substantial threat to his life, health, and development and that it was not reasonably likely that the conditions which resulted in the neglect or abuse could be substantially corrected or eliminated by father. Accordingly, the trial court did not err in concluding that it was in the best interest of L.N. to terminate father's parental rights under Code § 16.1-283(B).

We also find no error by the trial court in terminating father's parental rights under Code § 16.1-283(C)(2). Indeed, we have previously upheld terminations under multiple subsections of Code § 16.1-283. See Ferguson v. Stafford County Dep't of Soc. Serv., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992) (upholding the trial court's decision to terminate residual parental rights pursuant to Code § 16.1-283(B) and (C)(1)). The record amply supports the finding that father, without good cause, was unwilling or unable within a reasonable period of time to remedy substantially the conditions that led to L.N.'s foster care placement. Accordingly, the trial court did not err in concluding that terminating father's parental rights was in L.N's best interests under Code § 16.1-283(C)(2).

Father additionally contends the trial court erred in approving the foster care plan's "change in goal" to adoption. "A preponderance-of-the-evidence standard governs judicial review of the foster care plan recommendations, while the more stringent clear-and-convincing-evidence standard applies to the ultimate termination decision." Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240, 629 S.E.2d 721, 722 (2006). It logically

follows, therefore, that our conclusion that the trial court did not err in terminating father's

parental rights under the more stringent clear–and-convincing-evidence standard set forth in

Code § 16.1-283(B) and (C)(2) "necessarily subsumes" this aspect of father's appeal.  Toms v.

Hanover Dep't of Soc. Servs., 46 Va. App. 257, 265 & n.3, 616 S.E.2d 765, 769 & n.3 (2005).

For these reasons, we summarily affirm the trial court's decision to terminate father's

parental rights under Code § 16.1-283(B) and (C)(2).  See Rule 5A:27.

Affirmed.