COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Felton and Senior Judge Willis


DARLENE JOHNSON

                                                    MEMORANDUM OPINION[*]
v.      Record Nos. 2078-05-2 and 2098-05-2          PER CURIAM
                                                    DECEMBER 20, 2005
COUNTY OF CHESTERFIELD
  DEPARTMENT OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                              T.J. Hauler, Judge

            (Regina E. Baker, on briefs), for appellant.

            (Steven L. Micas, County Attorney; Michael P. Kozak, Assistant
            County Attorney; Robert D. Jacobs, Guardian *ad litem* for the infant
            children, on briefs), for appellee.


        Darlene Johnson appeals from the trial court's decision terminating her residual parental

rights to B.J. and R.R., her minor sons, pursuant to 16.1-283(C)(2).  Johnson contends (1) she had

good cause for her inability to substantially remedy the conditions that required the continuation of

B.J. and R.R. in foster care, (2) the Chesterfield County Department of Social Services (DSS) failed

to make reasonable and appropriate efforts to assist her, and (3) it was not in B.J.'s and R.R's best

interests to terminate her residual parental rights.  Upon reviewing the record and briefs of the

parties, we conclude this appeal is without merit.  Accordingly, we summarily affirm the decision of

the trial court.  See Rule 5A:27.

                                    BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence proved that three of Johnson's children, including B.J., came into the care of DSS on May 1, 2003 because Johnson was arrested for petit larceny and she was living in her car with them.[1]  Johnson was pregnant at the time with R.R, and after he was born in July 2003, Johnson and R.R. moved in with the infant's father, Thurman Richardson, at the InTown Suites.  In October 2003, Johnson and Richardson were involved in a domestic disturbance and Johnson was arrested.  Richardson left R.R. at a church, and DSS took custody of him.

Kathy DeShazo, a social worker with the DSS, testified the initial goal for B.J. and R.R was to return home.  A service plan required Johnson to obtain and maintain stable housing, to receive individual and family counseling, to maintain visitation with B.J. and R.R., and to obtain and maintain stable employment.  DeShazo reviewed the service plan with Johnson.  DeShazo provided Johnson with a list of counseling agencies, resources on housing, information on shelters to assist with immediate housing as well as long-term housing, provided her with information on budget and credit counseling agencies, information on transportation services, and information on agencies to assist with employment.  DeShazo told Johnson DSS would cover the expenses of any counseling and would facilitate transportation for visitation.

Johnson failed to complete any counseling, and there was no evidence she ever maintained a stable living environment for her children.  DSS paid for Johnson to stay in a hotel for a period of time.  DeShazo assisted Johnson with information about Section Eight housing and attempted to make arrangements for Johnson to live with her children at ESI, a shelter.  DeShazo called several housing authorities and shelters to assist Johnson in finding stable housing.  During the first year the children were in foster care, there were times when DeShazo did not know where Johnson was

---

[1] Two of Johnson's children were over the age of fourteen, and they exercised their prerogative to veto termination pursuant to Code § 16.1-283(G).  B.J. was thirteen at the time of the termination hearing.

living.  Johnson had a "hostile relationship" with the foster parents, and the police were called to the foster home due to an argument.  Johnson never requested funds to assist her in completing the requirements in the service plan and never stated she was unable to complete any requirements in the service plan due to a lack of resources.  Johnson failed to use the transportation services offered by DSS.  Johnson obtained employment in 2004 and was employed at the time of the termination hearing.

Kiva Rogers, a social worker, assisted DeShazo and testified Johnson told her she had been in therapy with Pam Hill, but she no longer needed therapy.  However, Rogers was unable to verify this statement because there was not a release form in Johnson's file permitting her to talk to Hill about Johnson's therapy.  Johnson never informed Rogers that she stopped therapy with Hill due to financial difficulties.

Following a psychological evaluation by Dr. Gruszkos, DeShazo referred Johnson to Mary Herrington for therapy.  Herrington met with Johnson for an initial assessment in August and October 2004; however, Johnson failed to keep a subsequent appointment.  Johnson attended family counseling with K.J.[2] at residential treatment centers.  Karina Rubow and Katy Wilder, K.J.'s therapists, testified Johnson failed to complete family therapy with K.J. and R.R.

In her testimony, Johnson conceded DeShazo explained the requirements she had to fulfill to have her children returned to her.  Johnson claimed she went for counseling with Hill, but she was unemployed at the time and was not aware DSS would pay for the counseling.  Johnson testified she signed a release form to permit Hill to discuss her counseling with DeShazo, yet she never attended family counseling with B.J. or R.R. because DeShazo "never did anything about it."  Johnson asserted DeShazo never gave her any resources for housing.  Johnson testified she

---

[2] K.J. was over the age of fourteen at the time of the termination hearing and has special needs.

attempted to get into a family program at a shelter, but she was unable to do so because the shelter would not accept children into the program. Johnson contended she applied for housing at several places, but was not accepted due to outstanding debts and a poor credit report. Johnson admitted she was employed in 2003 and worked in 2004, but she never paid anything on her outstanding debts, and she did not pay any money to support her children while they were in foster care. Johnson testified she was on a waiting list for Section Eight housing, but the waiting list was lengthy. Johnson stated she sought housing through the Richmond Redevelopment and Housing Authority, but was told she could not be placed because she did not have custody of her children. Johnson claimed she kept DeShazo informed where she was living "at all times," but admitted she failed to tell DeShazo that she was living with R.R. and Richardson in the InTown Suites in July 2003 because DeShazo was aware she had accused Richardson of sexually abusing her daughter, C.J.[3] Johnson again moved to the InTown Suites in June 2004, but moved out in May 2005 because fire damaged the motel. Johnson lived in a room at the La Quinta Inn at the time of the termination hearing, paying $800 a month for the room, and agreed the room was too small to accommodate her children. Johnson conceded her testimony regarding the help provided by DeShazo conflicted with DeShazo's testimony, but contended DeShazo was mistaken on the amount of help provided by DSS.

## ANALYSIS

Code § 16.1-283(C)(2) requires proof, by clear and convincing evidence that (a) the termination is in the best interests of the child, (b) "reasonable and appropriate" services have been offered to help the parent "remedy substantially the conditions which led to or required continuation of the child's foster care placement," and, (c) despite those services, the parent has failed, "without good cause," to remedy those conditions "within a reasonable amount of time

---

[3] C.J. was over the age of fourteen at the time of the termination hearing.

not to exceed twelve months from the date the child was placed in foster care." Because "'[r]easonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case," Ferguson v. Stafford Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992), we have held that the trial judge "must determine what constitutes reasonable and appropriate efforts given the facts before the court." Id. at 338-39, 417 S.E.2d at 4 (citation omitted).

"The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal, unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Johnson argues DSS only provided a list of shelters and therapists and did not actively assist her in securing housing and therapy. In this case, clear and convincing evidence proved that DSS provided Johnson with reasonable and appropriate services and she failed to remedy substantially the conditions which led to the children's foster care placement. At the termination hearing, Johnson conceded that her room at the La Quinta Inn was not appropriate housing for her children. Johnson was employed for more than a year prior to the termination hearing, supporting only herself, but was unable to find appropriate housing. DSS provided resources for housing, but Johnson failed to follow through with the resources provided. Despite being referred for individual therapy to Hill and to Herrington, Johnson failed to complete a course of individual therapy with either therapist as required by the service plan. Johnson also failed to complete family therapy as required by the service plan. DSS offered to help with transportation

to therapy, but Johnson failed to take advantage of the offer.  At the conclusion of the evidence, the trial judge stated:

> This Court finds that on the credibility issue, adversely to Ms. Johnson, first of all, that all of her actions since the inception of this matter have been characterized by seeming indifference and denial; secondly, that since the inception of the placement with DSS that she has exercised poor judgment, lack of parental responsibility for the health and welfare of the children.  This Court finds further that Ms. Johnson has selected recall as it relates to many of the facts that surround this case and has demonstrated little initiative to resolve those problems which have contributed to the removal of the children from the custody and control.

B.J. and R.R. came into the care of DSS in May 2003 and October 2003, respectively. Johnson had over two years to substantially remedy the conditions that brought B.J. into foster care and eighteen months to substantially remedy the conditions that brought R.R. into custody, but she failed to obtain suitable housing and failed to complete the required therapies.  "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities."  Kaywood v. Halifax County Dep't of Soc. Serv., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

In her questions presented, Johnson contends that it was contrary to the best interests of the children for her parental rights to be terminated.  However, Johnson failed to present any argument supporting this contention in her briefs.  "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration.  We will not search the record for errors in order to interpret appellant's contention and correct deficiencies in a brief." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

The record supports the trial court's finding that DSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(2).  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

Affirmed.