COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Fitzpatrick


MARK VARRICK, S/K/A
  MARK R. VARICK

                                                    MEMORANDUM OPINION[*]
v.        Record No. 0993-06-1                          PER CURIAM
                                                      OCTOBER 24, 2006
NEWPORT NEWS DEPARTMENT
  OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                              Charles P. Tench, Judge

                   (Kevin M. Diamonstein; Patton, Wornom, Hatten & Diamonstein,
                   L.C., on brief), for appellant.

                   (Lynn A. Sugg; Christie M. Wilson, Guardian *ad litem* for the minor
                   child; Office of the City Attorney; Wilson & Wilson, P.C., on brief),
                   for appellee.


        Mark Varrick, s/k/a Mark R. Varick, appeals a decision of the trial court terminating his

residual parental rights to his minor son, T.R.  Our review of the record and the trial court's final

order reveals that the trial court terminated Varrick's parental rights to T.R. pursuant to the

provisions of Code § 16.1-283(C)(1).  On appeal, Varrick argues that the trial court erred in

terminating his parental rights pursuant to the provisions of Code § 16.1-283(C)(2).  Because we

find that under either Code § 16.1-283(C)(1) or (C)(2), the evidence was sufficient to support the

trial court's termination of Varrick's parental rights, we summarily affirm the trial court's decision.

See Rule 5A:27.

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). "[T]ermination of residual parental rights is a grave, drastic, and irreversible action," Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991). When considering termination of a parent's residual parental rights to a child, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted).

Code § 16.1-283 provides for the termination of residual parental rights under carefully defined circumstances. Here, the trial court concluded that the evidence warranted termination of Varrick's residual parental rights to T.R. under subsection (C)(1) of Code § 16.1-283.

Code § 16.1-283(C)(1) provides as follows:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition[.]

- 2 -

Based on our review of the record, we conclude that the trial court's decision finding that there was clear and convincing evidence to support termination of Varrick's parental rights to T.R. under Code § 16.1-283(C)(1), as being in the child's best interests, was not plainly wrong and is supported by the evidence.

Credible evidence proved that on November 11, 1995, T.R. was born to Mya Robinson and Varrick. The family lived together in Newport News, Virginia until sometime in 1997, when Varrick moved out and went to South Carolina. In April 1998, Varrick was arrested in South Carolina. He has been continuously incarcerated since that time and is not scheduled for release until 2012.[1]

On April 30, 2003, the Newport News Juvenile and Domestic Relations District Court (J & DR court) awarded custody of T.R. to the Newport News Department of Social Services (NNDSS). At that time, T.R. was found to be an abused and neglected child due to the extensive physical abuse he sustained and witnessed while living with his mother.

Starting with April 30, 2003, T.R., who had emotional and behavioral problems stemming from the abuse he had suffered, was placed in four different foster homes. The four foster care placements failed because of extreme behavior and discipline problems. T.R.'s behavior was so out of control that he was thought to be emotionally disturbed, and he was placed in an educational setting within his school for emotionally disturbed children.

On August 8, 2005, the J & DR court terminated T.R.'s mother's parental rights. There are no appeals pending in her case.

Elaine Whitaker, a licensed clinical social worker, started counseling T.R. in July 2003. When she has asked T.R. about his father, T.R. could not tell her anything about him. Whitaker testified that T.R.'s behavior began to improve about twelve to eighteen months prior to the trial

---

[1] Varrick contended his release date was 2011.

court's March 17, 2006 hearing on the petition to terminate Varrick's parental rights. Whitaker stated that T.R. was doing much better and that he was now considered "a role model . . . ." T.R. was placed with his current foster family on June 4, 2004. Whitaker attributed T.R.'s improvement to therapy and to living in a safe, caring, and nurturing environment with his current foster family, where he does not have to worry about whether he will have food or whether he will be physically abused or watch someone he loves be abused. Whitaker indicated that T.R.'s relationship with his foster family is "very positive" and "very grounded." The family members participate in therapy so that they can understand what they need to do to meet T.R.'s needs. T.R. has expressed love for his foster family. Whitaker testified it would be "a scary thought" and a significant loss for T.R. if he were to lose his current foster family. T.R.'s foster family wants to adopt him.

T.R.'s foster care social worker, Edna Prince, indicated that T.R. has had no contact with Varrick and that Varrick had not seen T.R. since Varrick was incarcerated in 1998. Prince testified that NNDSS sent foster care service plans to Varrick at the correctional center in Jonesville, Virginia from the time T.R. first came into the custody of NNDSS in April 2003 through the time of the last service plan when the goal was changed to adoption in January 2005. None were returned marked as "not found, return to sender." NNDSS had no record of any address for Varrick in South Carolina. Varrick never responded to any of the foster care service plans sent to him or ever contacted NNDSS. After the December 12, 2005 J & DR court termination hearing, Varrick sent NNDSS one letter for T.R. NNDSS did not obtain information that Varrick had been moved to a South Carolina federal facility until after January 2005, when the foster care plan goal for T.R. was changed to adoption and approved.

Varrick admitted he was incarcerated at the Jonesville correctional facility from the end of 2002 until the end of 2003, but claimed he did not receive the foster care service plans. He

stated that after that time, he was moved to a South Carolina correctional facility. Varrick admitted that while he was incarcerated at the Jonesville correctional facility, he knew T.R. was in foster care, because Varrick's grandmother told him. Varrick admitted he is in no position to take custody of T.R. due to his incarceration. However, Varrick asserted that he would like Anna Mary Robinson, T.R.'s biological maternal grandmother, to have custody of T.R., regardless of whether she has alcohol problems or a history of neglect of her own child. Varrick agreed that if T.R.'s maternal grandmother could not "get" T.R., then he should be adopted by his current foster parents.

Based upon Varrick's failure to maintain any contact whatsoever with T.R. since he was placed in foster care in April 2003, notwithstanding the reasonable and appropriate efforts of NNDSS to communicate with Varrick as evidenced by Prince's testimony, Varrick's incarceration until at least 2011, and T.R.'s progress and current status in his pre-adoptive home, we cannot say that the trial court was plainly wrong in terminating Varrick's parental rights pursuant to Code § 16.1-283(C)(1) and finding that such termination was in T.R.'s best interests. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax County Dep't of Soc. Serv., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). While Varrick's incarceration, standing alone, is not sufficient to support the trial court's termination of his parental rights, see Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992), "it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support [the] court's finding that the best interests of the child will be served by termination." Id.

The record supports the trial court's finding that NNDSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(1) and establishing that the termination of Varrick's residual parental rights was in T.R.'s best interest.

In the alternative, contrary to Varrick's argument on appeal, clear and convincing evidence also established that the statutory requirements for terminating Varrick's residual parental rights to T.R. under Code § 16.1-283(C)(2) were met.

Code § 16.1-283(C)(2) provides as follows:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:
>
>     \*    \*    \*    \*    \*    \*    \*
>
> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition. The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

The evidence established that NNDSS sent the foster care service plans to Varrick while he was incarcerated at the Jonesville correctional facility and none were returned marked as "not found, return to sender." Notwithstanding Varrick's testimony to the contrary, the trial court, as

- 6 -

fact finder, was entitled to conclude that Varrick received at least some of the foster care service plans sent to him.  Yet, he made no contact with T.R. or NNDSS until January 2006 when he sent one letter to T.R.  Thus, NNDSS proved that Varrick, without good cause, within a reasonable period not to exceed twelve months from April 30, 2003, failed to remedy the conditions which required the continuation of T.R. in foster care.

Accordingly, we summarily affirm the trial court's decision.

<u>Affirmed.</u>