COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Beales and Senior Judge Fitzpatrick


JESSE RAY WYSOCKI, SR.

MEMORANDUM OPINION[*]

v.        Record No. 0620-07-2                                      PER CURIAM
                                                                   SEPTEMBER 25, 2007
HENRICO COUNTY DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Daniel T. Balfour, Judge

(Alexander M. Clarke, Jr.; Clarke & Prince, on brief), for appellant.
Appellant submitting on brief.

(Marissa D. Mitchell, Assistant County Attorney; Brice E. Lambert,
Guardian *ad litem* for the infant children; Lambert & Associates, on
brief), for appellee.  Appellee submitting on brief.


Jesse Ray Wysocki, Sr. (Wysocki) appeals the termination of his parental rights to his

children pursuant to Code § 16.1-283(C)(1).[1]  Wysocki argues that the Henrico County

Department of Social Services (HCDSS) failed to provide reasonable and appropriate services to

him and that it was not in the children's best interests to terminate his parental rights.  We

disagree and affirm.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  So viewed, the evidence

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Wysocki's brief states that his parental rights were terminated pursuant to Code
§ 16.1-283(C)(2), however, his rights were terminated pursuant to Code § 16.1-283(C)(1).

proved that the children were born on August 12, 2002 and Wysocki lived with them for the first eight months of their lives. While Wysocki lived with the children, he was unable to provide for them, he was unable to maintain stable employment, and he relied on the children's maternal grandfather to provide housing and financial support. Wysocki admitted that he and the children's mother were terrible parents and both used illegal drugs.[2]

In May 2005, Child Protective Services investigated a second complaint of abuse and neglect by mother and took the children into custody. The initial goal of the care plan was return to mother. When the children were taken into custody, Wysocki's whereabouts were unknown to HCDSS, but it later learned that he was incarcerated. Charlotte Robertson, a social worker with HCDSS, communicated with Wysocki while he was incarcerated and met with him after he was released in October 2005. Robertson told Wysocki that he needed to comply with the rules from his probation officer and that he needed to complete the HCDSS fatherhood group. Robertson told Wysocki that he needed to provide documentation of two clean drug screens before she would permit supervised visits with the children. When Wysocki was released from incarceration, he lived with his sister and mother. In November 2005, Wysocki called Robertson to set up a visit, but he had not provided the required documentation of clean drug screens and she refused his request to visit the children.

After no contact with Wysocki since November 2005, Robertson called Wysocki's sister's house in January 2006 and she learned that Wysocki had "just left." As of January 2006, Wysocki had attended two meetings of the fatherhood group and had not submitted documentation regarding clean drug screens. Robertson next saw Wysocki at a foster care hearing in February 2006 and introduced him to the new social worker assigned to the case,

---

[2] Mother did not appeal the termination of her parental rights to the children.

Tawana Olds-Davis. Wysocki gave Olds-Davis his address in New Market, Virginia, and she told him to resume attending the fatherhood group, resume substance abuse counseling, maintain contact with her, and provide documentation of his compliance with services.

Wysocki did not maintain contact with Olds-Davis. She sent a certified letter to his New Market address, but the letter was returned to her. Wysocki did not have a phone, and Olds-Davis had no other means to contact him. Due to the lack of contact from Wysocki, in July 2006, HCDSS filed a foster care plan with a goal of adoption. A permanency planning hearing was continued to September 2006 to allow HCDSS to obtain publication notice to Wysocki of the hearing and to conduct additional computer searches to try to determine Wysocki's location to notify him of the hearing. Through a computer search, Olds-Davis learned that Wysocki was incarcerated for a probation violation due to a positive drug screen. Prior to the termination hearing, Olds-Davis met with Wysocki at the jail and inquired about his plans for the children. Wysocki admitted that he would not be able to parent the children upon his release because he would be "getting his life together." At the termination hearing, Wysocki admitted he completed neither substance abuse counseling nor the fatherhood group.

Although the initial foster care goal was to return home, Robertson evaluated relative placement. Robertson met with Wysocki's mother, Gail Wysocki, who had expressed an interest in obtaining custody of the children. Gail Wysocki filed a custody petition, but the court denied it. Based upon concerns with Gail Wysocki's stability and lack of relationship with the children, Robertson determined that Gail Wysocki was not an appropriate placement option. After the goal in the care plan was changed to adoption, Robertson again contacted Gail Wysocki and, in November 2006, HCDSS conducted a home study. Based upon the study, HCDSS determined

that Wysocki was not a suitable placement option due to her age, her mental health conditions, her lack of independent housing,[3] and the lack of financial support.

In June 2005, the children entered foster care due to substance abuse and neglect by their mother. The children lived in a two-parent foster home with their two half-siblings since June 2006. Olds-Davis testified that the children were doing well with their foster parents and the foster parents were in the process of adopting the children's half-siblings and wanted to adopt the children.

## ANALYSIS

Wysocki argues that HCDSS failed to provide him with reasonable and appropriate services.

Code § 16.1-283(C)(1) requires proof, by clear and convincing evidence that

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Dep't of Soc. Servs., 14 Va. App. 333, 338-39, 417 S.E.2d 1, 4 (1992).

---

[3] Gail Wysocki lived with her daughter, who was not supportive of Gail Wysocki obtaining custody of the children. Gail Wysocki's daughter was planning on selling the house and moving across the country, and Gail Wysocki did not have an alternative housing arrangement.

"The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal, unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

After Wysocki was released from incarceration, Robertson met with him and told him what he needed to accomplish in order to have supervised visits with his children. HCDSS offered Wysocki counseling with a fatherhood group and told him to continue his substance abuse counseling, which was a part of his probation. Wysocki failed to complete substance abuse counseling, failed to complete the fatherhood group, and failed to provide HCDSS with documentation of two clean drug screens. Based upon a review of the circumstances of this case, the trial court did not err in concluding that HCDSS provided reasonable and appropriate efforts to Wysocki to strengthen his relationship with his children.

Wysocki argues that it was not in the children's best interests to terminate his parental rights.

> In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

"'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

When Wysocki lived with the children during their first eights months, he was unable to provide for them, he was unable to maintain stable employment, and he relied on the children's maternal grandfather to provide housing and financial support. Wysocki was incarcerated when HCDSS took custody of the children in 2005, but after his release he failed to complete substance abuse counseling, failed to complete the fatherhood group, and failed to maintain contact with HCDSS. Wysocki's whereabouts were unknown to HCDSS when it changed the goal to adoption, but Olds-Davis conducted a search and learned he was again incarcerated due to substance abuse. HCDSS evaluated the possibility of placement of the children with Wysocki's mother, but it determined that she was not an appropriate placement option. Since June 2006, the children have been living in a two-parent foster home with their two half-siblings. The children are well-adjusted in their home placement. Wysocki admitted he would not be able to care for the children after his release from incarceration because he would be "getting his life together." "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The record supports the trial court's finding that HCDSS presented clear and convincing evidence satisfying the statutory requirements of Code § 16.1-283(C)(1) and that the termination of Wysocki's parental rights was in the children's best interests. Accordingly, we affirm the decision of the trial court.

Affirmed.