COURT OF APPEALS OF VIRGINIA


Present:   Judges Haley, Millette and Senior Judge Coleman


KEON McDONALD

MEMORANDUM OPINION[*]

v.        Record No. 2360-07-2                          PER CURIAM
                                                        MARCH 11, 2008

HENRICO COUNTY DEPARTMENT
  OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF HENRICO COUNTY
                            Daniel T. Balfour, Judge

            (John W. Parsons, on brief), for appellant.

            (Ellen R. Fulmer, Assistant County Attorney; Matthew T. Witten,
            Guardian *ad litem* for the infant child, on brief), for appellee.


        Keon McDonald appeals the termination of his parental rights to his daughter, K.M.,

pursuant to Code § 16.1-283(C)(1).  McDonald argues the evidence was insufficient to show that he

failed to maintain contact with K.M. or failed to plan for her future for a period of six months after

she was placed in foster care.  He also argues the Henrico County Department of Social Services

(DSS) failed to make reasonable and appropriate efforts to communicate with him and to strengthen

the parent-child relationship.  Upon reviewing the record and briefs of the parties, we conclude this

appeal is without merit.  Accordingly, we summarily affirm the decision of the trial court.  See

Rule 5A:27.

                                    BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence proved that K.M. was born on July 16, 2000 and in May 2001 she was admitted to the hospital with two arm fractures. At the time, McDonald was in a juvenile detention facility and K.M. was living with her mother and other individuals. K.M. was removed from her mother's custody. From May 2001 to January 2003, K.M. was in foster care and she was ultimately placed with a maternal great aunt, Elaine Wright. In May 2006, Elaine Wright asked to be relieved of custody due to K.M.'s behavior. On June 15, 2006, DSS took custody of K.M. because her mother was still unable to care for her. At the time, McDonald was incarcerated in a prison. The initial foster care plan goal was for relative placement and with a concurrent goal of return to home. At McDonald's suggestion, K.M. was placed with Cassandra Bailey, his aunt. While K.M. was in Bailey's care, Bailey permitted unsupervised visits with K.M.'s grandmother, a convicted felon. Rebecca Silver, K.M.'s foster care worker with DSS, testified Bailey was not willing to follow stipulations that DSS placed on relative placement, and on November 2, 2006, K.M. was removed from Bailey's custody and placed in a therapeutic foster home. DSS continued to provide services and to work with K.M.'s mother, but she was unable to provide a specific plan to deal with her drug issues and to meet K.M.'s needs. In December 2006, DSS then changed the goal to adoption.[1]

Dr. Linda Doughtery, a clinical psychologist, evaluated K.M. in January 2007 and explained K.M.'s special needs. Dr. Doughtery testified K.M. exhibited aggressive behaviors, sexualized behaviors, defiance and hostility towards authority figures, and extreme anger. Dr. Doughtery testified K.M. required consistent parenting in order to learn boundaries and rules.

---

[1] K.M.'s mother attended the termination hearing in the juvenile and domestic relations district court, but she failed to attend the hearing in the circuit court.

Dr. Doughtery also recommended psychosocial counseling to address K.M.'s sexual overtones due to possible exposure to sexual activity and to address age appropriate coping mechanisms.

Sharon Updike, K.M.'s case manger at HopeTree Family Services, testified DSS referred K.M. to her in November 2006. Updike testified K.M. was doing well with her therapeutic foster family and K.M. was receiving additional services from an in-home therapist and services from the Attachment and Trauma Institute.

Silver telephoned McDonald on March 16, 2007, talked to him about K.M.'s behaviors, and explained that DSS was moving towards adoption. Silver testified McDonald told her he had last seen K.M. in 2002 or 2003 when K.M.'s mother and his mother brought K.M. to see him while he was in a group detention home. Silver telephoned McDonald on March 28, 2007 and discussed with him his ability to send cards and letters to K.M. McDonald wrote two cards to K.M., but K.M.'s therapist advised against giving the cards to K.M. because she needed to be more emotionally stable. Silver testified she told McDonald to continue to write to K.M. and DSS would hold the cards until K.M. was emotionally stable to receive them. McDonald told Silver he had completed anger management and problem solving classes and he was waiting to take the GED exam. Silver had not heard from McDonald since her March phone call, and on May 7, 2007, she wrote McDonald and encouraged him to keep in contact. Silver also told him to take parenting classes, to take job readiness classes, and to develop a plan for what his life would be like with K.M. after he was released from prison. Silver never received a response to her May 7, 2007 letter. On July 19, 2007, Silver phoned McDonald and they discussed the plan he needed to develop to meet K.M.'s needs. Silver also asked McDonald for a list of the names of family members and their contact information for K.M. McDonald never sent Silver a proposed plan to meet K.M.'s needs and never sent the names of family members. When Silver called the prison to follow up, she learned that McDonald had been transferred to a different

prison. Since McDonald had not placed Silver's name on a call list at his new prison, she was not able to contact him by telephone. On July 31, 2007, Silver sent a letter to McDonald requesting his plan for his life with K.M. after his release from prison and the family contact information. At the time of the termination hearing on August 14, 2007, McDonald had not provided the information requested by Silver.

McDonald testified he was committed to the Department of Juvenile Justice in May 2000 and K.M. was born in July 2000. McDonald stated at some point he was released to a group detention home, and, while he was at the group home, K.M. visited him with her mother. McDonald was at the group home for two to three weeks before he was charged with robbery. Prior to being charged with robbery, McDonald claimed he made inquiries about obtaining custody of K.M. McDonald testified he was convicted of robbery and his release date is in 2013. McDonald stated he did not respond to Silver's letters because he could not spell without a dictionary and he did not have access to his dictionary. He asserted he would continue to write K.M. letters and was "willing to do whatever to maintain contact with [his] child," but he became discouraged when he learned the two letters he had written K.M. had not been given to her. McDonald testified that while in prison, he had completed anger management classes, completed problem solving classes, completed the Breaking Barriers program, attended AA meetings, was on the waiting list for the GED program, and was trying to save money to send K.M. a present.

ANALYSIS

McDonald argues that DSS's evidence was insufficient to prove he failed to maintain continuing contact and to substantially provide for K.M.'s future for a period of six months after she was placed in foster care. He also argues his incarceration was "good cause" for any failure to maintain contact or to substantially provide for K.M.

- 4 -

Code § 16.1-283(C)(1) requires proof, by clear and convincing evidence that:

> The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.
>
> [W]hile long-term incarceration does not, *per se*, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

It is well settled that "[w]hen addressing matters concerning a child . . . the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal, unless plainly wrong or without evidence to support it.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

K.M. entered foster care in 2001, lived with a maternal aunt until 2006, lived with a paternal great aunt for a few months in 2006, and was placed in a therapeutic foster home in November 2006. McDonald had a few visits with K.M. while he was in a detention home in 2002 or 2003, and he wrote K.M. two cards in 2007. Although a therapist advised against giving the cards to K.M. at that time, Silver encouraged McDonald to continue to write to her and the

cards would be given to K.M. when K.M. was emotionally stable. McDonald did not send any additional cards to K.M. Although McDonald may have inquired about K.M. in 2002 or 2003 during the few weeks he was not incarcerated, there was no evidence he parented K.M. in any way during this time. McDonald failed to contact Silver after her March 2007 phone call and on May 7, 2007, Silver wrote McDonald and encouraged him to keep in contact and to develop a plan of what his life would be like with K.M. after he was released from prison. Silver never received the plan or requested family contact information. McDonald was transferred to another prison and did not notify Silver about the transfer. Silver was unable to call McDonald because he had not placed her name on his call list. There was no evidence that McDonald's failure to communicate with Silver and K.M. was due to his incarceration. Based upon a review of the record, DSS presented clear and convincing evidence that McDonald failed to maintain continuing contact with and to provide or substantially plan for the future of K.M. for a period of six months after her placement in foster care.

McDonald argues DSS never provided him with services to strengthen his relationship with K.M.

Code § 16.1-283(C)(1) required DSS to prove that it made "reasonable and appropriate" efforts to communicate with McDonald and strengthen McDonald's relationship with K.M. "'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson, 14 Va. App. at 338-39, 417 S.E.2d at 4.

McDonald's interaction with K.M. was limited to a few visits in 2002 or 2003 while he was in a detention facility, and Silver encouraged McDonald to write cards and letters to K.M. to establish a relationship with her. Although K.M.'s therapist did not recommend giving K.M. the two cards McDonald sent to her, Silver continued to encourage McDonald to send K.M. cards

and letters to be given to her at a later date. McDonald failed to send any additional cards or letters to K.M. Silver called and wrote letters to McDonald; except for the two cards he sent to K.M., he failed to respond to Silver's letters. McDonald also failed to include Silver's name on his call list after he was transferred to another prison and she was unable to call him, but she sent him another letter. The evidence showed that K.M. needs consistent parenting and needs special therapies to address aggressive and sexualized behaviors. McDonald will not be able to participate constructively in K.M.'s treatment until he is released from prison in 2013. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Thus, given the circumstances, the record contains ample evidence from which the trial court could find that DSS made "reasonable and appropriate" efforts to communicate with McDonald and to strengthen his limited relationship with K.M.

Accordingly, we summarily affirm the decision of the trial court.

Affirmed.