COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

CORY AUBREY SWISHER

v.      Record No. 0755-15-2

ALBEMARLE COUNTY
  DEPARTMENT OF SOCIAL SERVICES                    MEMORANDUM OPINION*
                                                           PER CURIAM
CORY AUBREY SWISHER                                  NOVEMBER 17, 2015

v.      Record No. 0758-15-2

ALBEMARLE COUNTY
  DEPARTMENT OF SOCIAL SERVICES


               FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                         John J. McGrath, Jr., Judge

         (Pamela R. Johnson, on brief), for appellant.

         (Richard A. DeLoria; Stephanie Cangin, Guardian *ad litem* for the
         minor child; Albemarle County Attorney's Office, on brief), for
         appellee.


       Cory Swisher (father) appeals the orders terminating his parental rights to his child, M.H.S.,

and approving the foster care goal of adoption. Father argues that the trial court erred in terminating

his parental rights because "there is no per se rule requiring termination of parental rights of an

incarcerated parent and there were appropriate family members to assume custody of the child."

Upon reviewing the record and briefs of the parties, we conclude that these appeals are without

merit. Accordingly, we summarily affirm the decisions of the trial court. See Rule 5A:27.

---

       * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

Father and Sara Logan Howe are the parents of M.H.S., who was born in March 2013. The Albemarle County Department of Social Services (the Department) removed the child from his mother's care on July 31, 2013 because of allegations of physical neglect and domestic violence. Father did not live with mother and the child at the time of the removal.

The goal of the initial foster care plan was to return home, which was approved by the Albemarle County Juvenile and Domestic Relations District Court (JDR court). The Department offered father several services, including a referral for a psychological examination with Dr. Marilyn Minrath. Father refused to participate in the examination. He testified that he did not meet with Dr. Minrath because "I didn't feel I needed somebody to tell me how to raise my son, like what's wrong with me and stuff like that." Father also refused to participate in parent coaching and individual counseling. In addition, the Department referred father to the family treatment court in order to address his illegal drug use. Father did not participate in that program either. He explained that he was attending drug classes under his probation officer's supervision, so he did not think that he needed to take additional classes.

In November 2013, father was arrested for driving under the influence, eluding police, reckless driving, and driving with a suspended or revoked license, second or more offense within the last ten years. In January 2014, father was convicted of the charges. He testified that he served one month in jail and was released on an alcohol monitor for one month.

As a result of the November 2013 charges, he violated his probation. In 2005, he was convicted of two counts of carnal knowledge of a child and sentenced to ten years in prison with

eight years suspended. He violated his probation three times prior to November 2013. On June 13, 2014, he was convicted of violating his probation for the fourth time. The Augusta County Circuit Court revoked his entire sentence and ordered him to serve six years in prison.

The Department changed the foster care goal to adoption. On August 1, 2014, the JDR court approved the goal of adoption. On October 20, 2014, the JDR court entered an order terminating father's parental rights. Father appealed to the circuit court.[1]

On January 27-28 and March 10, 2015, the circuit court heard evidence and argument regarding the foster care plans and termination of parental rights. In addition, the court heard evidence and argument regarding the motions for custody and visitation filed by the maternal grandmother, paternal uncle, and paternal uncle's fiancée. During the trial, the maternal grandmother requested that the court non-suit her petition for custody. There was evidence that the paternal uncle had a significant criminal history and faced a probation violation hearing on June 6, 2015. His fiancée did not testify or present any evidence at trial. Father expressed his desire for the child to return to mother. Mother testified that she completed an inpatient drug treatment program in Florida and was compliant with her treatment. On March 10, 2015, the circuit court did not approve the foster care plan with the goal of adoption and continued the petition to terminate parental rights. It ordered mother to sign releases for the Department to obtain her records from the Florida program and ordered mother to participate in random drug and alcohol screens.

On April 3, 2015, the Department filed a "Motion to Reconsider & Vacate Order" and a "Motion to Disapprove Foster Care Service Plan." The Department alleged that mother lied to the court about her drug treatment. The records from the Florida inpatient treatment program

---

[1] The JDR court also terminated mother's parental rights. Mother appealed to the circuit court, which consolidated mother's and father's cases.

- 3 -

revealed that mother was discharged from the program due to her lack of compliance and positive drug screens. Further, mother refused to submit to random drug screens since the March 10, 2015 order.

On April 7, 2015, the circuit court held a subsequent permanency planning hearing. Mother admitted to lying to the court previously. The circuit court did not approve the foster care plan with the goal of return home.

On April 16, 2015, the circuit court held a final hearing. It approved the foster care plans with the goal of adoption and terminated father's parental rights.[2] These appeals followed.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Father argues that the trial court erred in terminating his parental rights because "there is no per se rule requiring terminating of the parental rights of an incarcerated parent."[3] He contends there was evidence presented that he had good parenting skills and was compliant with his visitation. He asserts that his "good parenting skills are more important than a temporary absence from the child's life."

---

[2] The circuit court also terminated mother's parental rights.

[3] Father also states that the trial court erred in terminating his parental rights because "there were appropriate family members to assume custody of the child." Father waived this argument because he did not address it in his opening brief. See Muhammad v. Commonwealth, 269 Va. 451, 478, 619 S.E.2d 16, 31 (2005) ("Failure to adequately brief an assignment of error is considered a waiver." (citation omitted)).

- 4 -

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

Father testified that he anticipated his release date to be in June 2019. In addition to father's incarceration, the Department presented evidence about father's criminal history, including two counts of carnal knowledge of a child. Prior to his incarceration in 2014, the Department offered services to father, but he did not participate. He refused to participate in a psychological examination or counseling. He continued to abuse drugs and alcohol. Father made no efforts to remedy the conditions that led to the child being placed in foster care between July 2013, when the child was removed, and June 2014, when father was incarcerated.

The child has been in foster care since he was four months old. At the time of the final hearing, the child was twenty-five months old, and he had been in foster care for twenty-one months.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the totality of the circumstances, the trial court did not err in terminating father's parental rights and approving the goal of adoption.

CONCLUSION

For the foregoing reasons, the trial court's rulings are summarily affirmed. Rule 5A:27.

Affirmed.